# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

United States District Court
Southern District of Texas
FILED

MAR 1 7 2000

Michael N. Milby, Clerk

| | |
|---|---|
| GAMFW, INC. D/B/A/ FISHERMAN'S WHARF and BOBBY GRUMBLES <br><br> Plaintiffs, <br><br> vs. <br><br> THE UNITED STATES OF AMERICA, et. al <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) |

CAUSE NO. C-00-028

## CERTIFICATE OF CONSULTATION

In consideration of Local Rule 6, the federal defendants hereby certify that on March 15, 2000, counsel for federal defendants contacted counsel for plaintiffs regarding this Motion for Protective Order. As explained to plaintiffs' counsel, this Motion for Protective Order seeks the Court's full protection for a document that was clearly labeled as privileged but inadvertently disclosed in the Administrative Record in this case. Counsel for plaintiffs state that they oppose this motion.

HEIDI KUKIS
Attorney-in-Charge for Federal Defendants
D.C. Bar No. 459212
Office of the Assistant Attorney General
Environment & Natural Resources Div.
U.S. Department of Justice
950 Pennsylvania Ave., NW, Room 2738
Washington, D.C. 20530
Telephone: (202) 305-0544
Facsimile: (202) 305-2573

United States District Court
Southern District of Texas
FILED

MAR 1 7 2000

Michael N. Milby, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

GAMFW, INC. D/B/A/ FISHERMAN'S )
WHARF and BOBBY GRUMBLES )
)
Plaintiffs,                  )          **CAUSE NO. C-00-028**
)
vs.                           )
)
THE UNITED STATES OF AMERICA, )
et. al                        )
)
Defendants.             )
_____)

**FEDERAL  DEFENDANTS' MOTION  FOR  A  PROTECTIVE  ORDER**
**AND SUPPORTING MEMORANDUM OF LAW**

The Federal Defendants, William M. Daley, and the National Marine Fisheries Service, and

pursuant to Fed.R.Civ.Proc. 26(b) and Fed.R.Civ.Proc. 26(c) respectfully request this Court to

issue a Protective Order regarding a privileged document which was inadvertently included  in the

Administrative Record filed in this case.  In support of this motion, federal defendants would show:


**I      PROCEDURAL  BACKGROUND**

1.      Recreational Fishermen of America, Recreational Fishing Alliance Texas,

Recreational Fishing Alliance National, and Bobby Grumbles filed their original complaint on January

19, 2000.  Process was complete on February 2, 2000.   The suit challenges the National Marine

1

Fisheries Service's (NMFS) Red Snapper Management Measures Interim Rule & Request for

Comments (Interim Rule), promulgated pursuant to the Magnuson-Stevens Fisheries Conservation

& Management Act, 16 U.S.C. §1801, et seq., (Magnuson-Stevens Act), which modifies

recreational and commercial fishing seasons, increases recreational minimum size limit and reinstates

a 4-fish bag limit for captain and crew of for-hire vessels. (64 Fed.Reg.71056, December 20,

1999)

     2.     On January 20, 2000, this Court signed an Order to Answer and File Administrative

Record that compelled the federal defendants to file their Administrative Record by February 20,

2000. This Order was filed with the Court on January 25, 2000 (attached as Government Exhibit

A) and mailed from Texas on January 26, 2000. It was received by the Secretary of Commerce on

or about January 31, 2000, and, thereafter, was received by the National Oceanic and Atmospheric

Administration's (NOAA) Southeast Regional Office of General Counsel during the first week of

February 2000.

     3.     On February 15, 2000, plaintiffs Recreational Fishermen of America, Recreational

Fishing Alliance Texas, Recreational Fishing Alliance National, withdrew from the suit and

GAMFW, Inc.,[1] d/b/a/ Fisherman's Wharf and Bobby Grumbles filed an Amended Complaint. On

February 17, 2000, the federal defendants certified and sent to the Court a complete Administrative

Record for this case as well as Federal Defendants' Answer to Plaintiffs' First Amended Original

Complaint. This Court received and filed those materials on February 18, 2000.

---

[1] GAMFW, Inc., was incorporated in Texas on 8/2/1993. Plaintiff Bobby Grumbles is a director.

2

CUtePDF - www.texiio.com

## II   FACTUAL  BACKGROUND

4.      Upon receiving in early February the Court's Order to file the Administrative

Record by February 20, 2000, NOAA's Office of General Counsel for the Southeast Region began

immediately to assemble the materials needed.  When completed, the Administrative Record in this

case totaled 18 volumes of material and comprised 8,882 pages of documents.

5.      The amount of time the federal defendants had to complete, copy and file the

Administrative Record in this case was constrained for several reasons.  First, this Administrative

Record is voluminous and required extensive time to compile and organize.  Second, the commercial

firm that made the necessary four copies of the Administrative Record required seven days to

complete the job.  It took one day to re-assemble the copies of the Administrative Record after they

had been made and send them to the various recipients.[2]  This left about nine business days for the

federal defendants to assemble, review and index the entire 18-volume, 8,882 pages of the

Administrative Record.[3]

6.      A NMFS employee who was instrumental in preparing the Interim Rule came to the

Office of General Counsel to assist in the assembly of the Administrative Record.  The documents

he selected were then reviewed by a paralegal for material that might be privileged.  These

documents were reviewed by an attorney who determined which would be withheld from the

---

[2]  The four copies of the Administrative Record were sent to this Court, counsel for the plaintiffs in
Texas, counsel for federal defendants in Washington, D.C., and the Office of General Counsel at NMFS'
headquarters in Maryland.

[3]  The people working to assemble the Administrative Record worked over two weekends as did the
employees at the copy center to meet the court-ordered deadline.

Administrative Record.  At the end of the Index to the Administrative Record is a list of 82

documents withheld on the basis of privilege.

7.      The paralegal prepared an Index to the Record (the Index) and the attorney then

reviewed the entire Administrative Record but did not look at each of the 8,882 individual pages.

The Administrative Record was Bates-stamped and sent out of the Office of General Counsel to be

copied.

8.      To meet the court-ordered deadline, the Administrative Record was shipped, via

Federal Express, on February 17, 2000, in order to arrive at this Court before the weekend

deadline.  This Court received and filed the Administrative Record in this case on February 18,

2000.

9.      Subsequently, in order to facilitate finding documents in the Administrative Record,

the NMFS employee, the paralegal and the attorney began to expand the Index, adding additional

detail.  The revised Index would be sent to all recipients of the Administrative Record.  After 5 PM

on March 8, 2000, during the process of compiling the more detailed Index, it was discovered that a

duplicate of one of the documents withheld from the Administrative Record, and identified in the list

of Documents Withheld on the Basis of Privilege[4/], had been inadvertently included in the record at

Bates-pages 5256-5257.  The document had been attached to other material and was not

---

[4/] Document #5, a memorandum from the Regional Attorney to Reviewers of the Rule,
is clearly labeled    PRIVILEGED & CONFIDENTIAL
                          ATTORNEY WORK PRODUCT
                          ATTORNEY CLIENT COMMUNICATION.

This document is attached as Federal Defendants' Exhibit B.

separately listed.  The attorney then personally examined each of the 8,882 pages in the

Administrative Record to ascertain that it contained no other privileged documents.  <u>See</u> Affidavit of

Counsel (attached as Government Exhibit C).

10.     Pursuant to Local Rule 6, counsel for federal defendants notified counsel for

plaintiffs about their impending Motion for Protective Order on March 15, 2000.  Counsel for

plaintiffs stated that he objected to the Motion for Protective Order.  He stated that he already has

distributed copies of the Administrative Record to third parties interested in this case.  However,

counsel for plaintiffs agreed not to distribute any more copies of the Administrative Record to any

other party until this motion has been resolved.


**III     APPLICABLE LAW**

**A.     <u>The Attorney-Work-Product Immunity Doctrine Is Applicable</u>**

The document at issue may be characterized as protected either on the basis of the

Attorney-Client privilege or the Attorney-Work-Product Immunity Doctrine.  The latter doctrine

originated with <u>Hickman v Taylor</u>, 329 U.S. 495 (1947), and is most applicable in this case.  Since

then, the courts have made very clear that the attorney-work-product privilege can be waived or

forfeited only by the actions of the attorney or client which are consistent with "a *conscious*

*disregard* of the advantage that is otherwise protected by the work-product rule." <u>Doe v. United</u>

<u>States</u>, 662 F2d 1073, 1081 (4th Circuit 1981)(emphasis added).  In other words, the work-

product doctrine generally does not allow an adverse party to gain the advantage of opposing

counsel's labors unless that privilege is knowingly waived.  <u>Id.</u>

**B.**     **This Circuit Accords Protection of Inadvertently Disclosed Documents**

The Fifth Circuit has adopted a broad and generous test to determine whether an

inadvertently disclosed document retains its privileged status and is accorded the Court's full

protection.  Alldread v City of Grenada, 988 F.2d 1425, 1433 (5th Cir. 1993).  Usually, four to five

elements are considered:

| | | |
|---|---|---|
| i) | The reasonableness of the precautions to prevent inadvertent disclosure; | |
| ii) | The time taken to rectify the error; | |
| iii) | The scope of the discovery;[5] | |
| iv) | The extent of the disclosure; | |
| v) | An overreaching issue of fairness and protection of an appropriate privilege which must be judged by balancing  whether the privilege is guarded with care and diligence or negligence and indifference. | |

These elements, enunciated in 1985 by the District Court for the Southern District of  New York,[6]

and adopted by the District Court for the Northern District of California in Hartford Fire Insurance

Co. v Garvey, 109 FRD 323 (N.D.CA 1985), were relied upon by the Fifth Circuit in Alldread,

988 F.2d 1425.

---

[5] For purposes of discussion, production of the Administrative Record will be equated with the term 'discovery' referred to in applicable case law.

[6] Lois Sportswear, USA, Inc. v Levi Strauss & Co., 104 F.R.D. 103 (S.D.N.Y. 1985).

### 1.    Federal Defendants Took Reasonable Precautions

Both the <u>Lois Sportswear</u> and the <u>Hartford Fire</u> courts noted the apparent lack of a

practice of designation of confidential documents at the time or origination.[2]  In the case at hand,

federal defendants designated privileged documents at origination, and the document at issue is

labeled clearly as a privileged document.  <u>See</u> Government Exhibit B.  Additionally, the court in

<u>Lloyd's Bank v. Republic of Ecuador</u>, 1997 WL 96591 (S.D.N.Y. 1997), noted with favor that

when the error was discovered, counsel for Ecuador immediately conducted another review of the

documents produced, citing <u>Stratagem Development Corp. v Heron Int'l n.v.</u>, 153 F.R.D. 535

(S.D.N.Y. 1994), for the proposition that precautions were reasonable where attorneys conducted

an initial document review, and an additional review after the disclosure was discovered.  In the

case at hand, counsel conducted an initial document review, then when the inadvertent disclosure

was discovered, also immediately reviewed each of the 8,882 pages of the Administrative Record,

thereby further evincing concern for the protection of the privilege.

### 2.    Federal Defendants Quickly Rectified Their Error

Within three business days of discovery of the inadvertent disclosure of the privileged

document, the attorney who had inadvertently released the document reviewed every page of the

Administrative Record, researched applicable law to determine what procedure to follow and what

relief is available, and drafted this Motion for a Protective Order.  <u>See</u> Affidavit of Counsel/Exhibit

C.  Within five business days, federal defendants had consulted with opposing counsel about the

---

[2]  <u>Lois Sportswear</u>, 104 F.R.D. 103, 105;  <u>Hartford Fire</u>, 109 F.R.D. 232, 328.

impending Motion for Protective Order.  Within six business days, federal defendants sent the

Motion for Protective Order and accompanying documents to this Court via Federal Express mail

service.

### 3.      Scope of Discovery

The court in Lloyd's Bank considered the amount of privileged or protected material

disclosed compared to the document production as a whole, and cited Baker's Aid v Hussman

Foodservice Co., 1998 WL 138254 (E.D.N.Y. 1988), for the proposition that "'[c]ourts have

routinely found that where a large number of documents are involved, there is more likely to be an

inadvertent disclosure than a knowing waiver.'" Lloyd's Bank, 1997 WL 96591, *4 (citing Baker's

Aid, 1998 WL 138254, *5).  In Lloyd's Bank, the court found that 50 inadvertently produced

documents, comprising 227 pages out of a total of approximately 10,000 pages did not constitute a

waier.  Lloyd's Bank, 1997 WL 96591, *4.  In like manner, the Lois Sportswear court found

defendant's counsel's inadvertent release of 22 privileged documents from approximately 16,000

pages which had been reviewed by attorney-supervised paralegals to not constitute a waiver.  Lois

Sportswear, 104 F.R.D. at 105.  In the case at hand, although the scope of the discovery was

comprehensive inasmuch as the federal defendants were required to produce all documents relevant

to the promulgation of the Interim Rule, a single two-page document, in an 8,882 page

Administrative Record was inadvertently disclosed.  Because of the voluminous nature of the

Administrative Record and the fact that the inadvertently disclosed document was not separately

listed because it was attached to other material, the federal defendants have not waived their

privilege with respect to this document.

8

### 4.    Extent Of The Disclosure Is Not Great

In Lois Sportswear, the error was discovered after opposing counsel had reviewed the

documents and requested copies thereof. Lois Sportswear, 104 FRD at 103. In Lloyd's Bank, the

error was not discovered until mention of the disclosed documents appeared in subsequent

pleading. Lloyd's Bank, 1997 WL 96591. Comparing these cases to the one at hand, the extent

of inadvertent disclosure of the privileged document is not great. Indeed, the federal defendants

discovered their error and notified opposing counsel and this Court of the inadvertent disclosure

before any briefs on the substantive issues have been filed in this case. Further, the federal

defendants are aware of no publication of the inadvertently disclosed document incapable of

protection by this Court's Protective Order.

### 5.    Fairness Dictates That The Document Be Protected

As a general matter, "inadvertent production will not waive the privilege unless the conduct

of the producing party or its counsel evinced such extreme carelessness as to suggest that it was not

concerned with the protection of the asserted privilege." Desai v American Int'l Underwriters,

1992 WL 110731, *1 (S.D.N.Y. 1992) "This rule best reconciles the principles underlying the

attorney-client privilege with the realities of discovery process in complex litigation." Asian

Vegetable Res. & Dev. Center v Inst. Of Int'l Educ. 1995 WL 491491, *7 (S.D.N.Y. 1995).

In the case at hand, it would be unfair to make federal defendants suffer the waiver of the

privilege of this document. It was an isolated, inadvertent error that was understandable given the

severe time constraints within which the federal defendants were working to produce the 18-volume

Administrative Record and the fact that the document in question was attached to other material.

9

CVisPDF - www.fenrir.com

The mistake was addressed immediately.  Furthermore, while plaintiffs' counsel stated that he has distributed the Administrative Record to third parties interested in this case, he cannot show that either plaintiffs or these unnamed third parties have relied upon this document to their detriment.

### C.    Protective Order Is The Appropriate Remedy In This Case

Common remedies to situations where privileged documents have been inadvertently disclosed include the return of all copies of the inadvertently disclosed documents and the issuance of Protective Orders regarding those documents.[9]  In the case at hand, these remedies are particularly appropriate considering that the disclosure was clearly inadvertent, the document falls squarely within the attorney-work-product immunity doctrine, and the federal defendants have acted expeditiously to correct the error.  The parties in this case have not begun briefing of the underlying issues; thus, the plaintiffs have not relied on this inadvertently disclosed document to their detriment. Furthermore, there is litigation related to the case at hand in a Florida District Court that should be protected from this inadvertent disclosure.  See Texas Shrimp Association v. Daley (Civ. No. 4:00cv20-RH (D.C.N.D. Florida).

Therefore, the federal defendants move this Court for a Protective Order which:

1.    Prohibits the plaintiff or its counsel from using or disclosing the privileged document identified herein; or

2.    Using or disclosing any information gleaned exclusively from said document;

---

[9] Supra Alldread, 988 F.2d 1425; Allgood v R.J. Reynolds Tobacco Co., 80 F3d 168 (5th Cir. 1993).

10

3.     Directs the return to the federal defendants of the original and all copies of said

document; and

4.      Directs the destruction of all other writings commenting upon or derived from the

contents of the inadvertently produced document; and

5.     Requires certification by counsel for the plaintiff of compliance with this Protective

Order.

## IV    CONCLUSION

For all of the foregoing reasons, this Court should grant Federal Defendants' Motion for

Protective Order and accord its full protection to the inadvertently disclosed privileged document in

the Administrative Record in this case.

Respectfully submitted this ⎯⎯ 15th ⎯⎯ day of March, 2000.

> LOIS J. SCHIFFER
> Assistant Attorney General
> Environment and Natural Resources Division
>
> JEAN WILLIAMS
> Chief, Wildlife & Marine Resources Section
> Environment and Natural Resources Division
>
> LARRY LUDKA
> Assistant United States Attorney
>
>
> HEIDI KUKIS
> Attorney-in-Charge for Federal Defendants
> D.C. Bar No. 459212
> Office of the Assistant Attorney General
> Environment & Natural Resources Div.
> U.S. Department of Justice

11

950 Pennsylvania Ave., NW, Room 2738
Washington, D.C. 20530
Telephone: (202) 305-0544
Facsimile: (202) 305-2573

Of Counsel for Defendants:

E.V.E. JOY
Attorney Advisor
Mississippi Bar No. 3245
United States Department of Commerce
National Oceanic and Atmospheric Administration
Office of General Counsel-Southeast Region
9721 Executive Center Drive, N
Suite 137
St. Petersburg, FL 33702
Telephone: (727) 570-5370
Facsimile: (727) 570-5376

CONSTANCE SATHRE
Attorney-Advisor
United States Department of Commerce
National Oceanic and Atmospheric Administration
Office of General Counsel for Fisheries
1315 East-West Highway
Room 15602
Silver Spring, MD 20910
Telephone: (301) 713-2231
Facsimile: (301) 713-0658

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

|  |  |  |
|---|---|---|
| **GAMFW, INC. D/B/A/ FISHERMAN'S WHARF and BOBBY GRUMBLES** | ) ) ) | |
| **Plaintiffs,** | ) ) | **CAUSE NO. C-00-028** |
| **vs.** | ) ) | |
| **THE UNITED STATES OF AMERICA, et. al** | ) ) ) | |
| **Defendants.** | ) ) | |

## [PROPOSED] ORDER

This matter is before the Court on Federal Defendants' Motion For Protective Order regarding

the inadvertent disclosure of a privileged document in the Administrative Record in this case (AR 5256-

5257).  Upon consideration of the motion and associated papers, it is on this _____ day of

_____, 2000,

ORDERED that, for good cause showing, Federal Defendants' Motion For Protective Order

should be and hereby is GRANTED.  The document at issue will retain its privileged status and is

accorded the Court's full protection.  This Order:

    1.    Prohibits the plaintiff or its counsel from using or disclosing the privileged document identified herein; or

    2.    using or disclosing any information gleaned exclusively from said document; and

    3.    directs the return to the federal defendants of the original and all copies of said document; and

4.      directs the destruction of all other writings commenting upon or derived from the contents of the inadvertently produced document; and

5.      requires certification by counsel for the plaintiff of compliance with this Protective Order.


_____

H.W. HEAD, JR.
UNITED STATES DISTRICT JUDGE

# CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of March 2000, copies of the foregoing, FEDERAL DEFENDANTS' CERTIFICATE OF CONSULTATION, MOTION FOR A PROTECTIVE ORDER AND SUPPORTING MEMORANDUM OF LAW, and [PROPOSED] ORDER were sent Federal Express overnight mail to:

Les Cassidy
Woolsey & Cassidy, P.C.
1020 Bank of America Center North
500 N. Water Street
Corpus Christi, Texas 78471
(361) 887-2965

Heidi Kukis

C020821

# THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### CORPUS CHRISTI DIVISION

United States District Court
Southern District of Texas
ENTERED

JAN 2 5 2000

Michael N. Milby, Clerk of Court

| | |
|---|---|
| RECREATIONAL FISHING OF AMERICA, § | |
| RECREATIONAL FISHING ALLIANCE § | |
| TEXAS,  RECREATIONAL FISHING § | |
| ALLIANCE NATIONAL, & BOBBY § | 3. |
| GRUMBLES § | |
| § | |
| V. § | CA. NO.C-00-28 |
| § | |
| THE UNITED STATES OF AMERICA, § | |
| THE DEPARTMENT OF COMMERCE, § | |
| WILLIAM DALEY, SECRETARY, & § | |
| NATIONAL MARINE FISHERIES SERVICE§ | |

## ORDER TO ANSWER AND FILE ADMINISTRATIVE RECORD

The Court orders defendants to file their answer to plaintiffs' complaint as well as the complete administrative record supporting National Marine Fisheries' Interim Rule, 64 Fed. Reg. 71056, by February 20, 2000.

ORDERED this 20 day of _____Jan_____, 2000.

_____H.W. Head_____
H. W. HEAD, JR.
UNITED STATES DISTRICT JUDGE

GOVERNMENT EXHIBIT A

U.S. OEELCHAT MAIL

PENALTY FOR PRIVATE USE $300

PB METER
8501576  U.S. POST.

CORPUS CHRISTI TX

JAN 25 2000 TX

PM
26
2000

$ 516

CLERK
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
521 STARR STREET
CORPUS CHRISTI, TEXAS 78401

OFFICIAL BUSINESS

William Daley, Secretary
Department of Commerce
14th and Constitution Avenue, N.W.
Washington, DC  20230

CutePDF - www.tesisx.com

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT
ATTORNEY CLIENT COMMUNICATION

MEMORANDUM FOR:    Reviewers

FROM:              GCSE B. Michael McLemore

DATE:              Monday, November 22, 1999

SUBJECT:           **Revised** Draft Interim Rule to Reduce
                   Overfishing in Red Snapper Fishery for Year
                   2000 'Specifications'

The rule does not address the annual TAC. The current annual TAC
is 9.12 million pounds, and that TAC will carry over for the 2000
fishing season unless changed. NMFS has disapproved the revised
red snapper rebuilding program recently submitted by the council
in its "SFA" amendment, because the parameters[1] were based on
fishing mortality rates rather than biomass estimates.  The
existing rebuilding parameters[2], however, are also based upon
fishing mortality rates and not biomass estimates.  The stock
assessment report indicates that a TAC of 0-9.12 million pounds
is an acceptable biological catch only if the current rebuilding
parameters (see footnote 2 below) are the target, and if shrimp
trawl bycatch mortality is reduced by 50%. The report also
indicates that current estimates of bycatch mortality reduction
are only 40%, and that the panel did not believe 50% was possible
in 2000. In addition, red snapper were listed on each report to
Congress as being overfished, triggering a timeframe (which has
now expired) for both the council and then the secretary to act
in establishing an appropriate rebuilding program. Finally, the
SEFSC certification of the rule as based upon the best scientific
information available also notes the considerable uncertainty and
risk associated with the information when used for estimating
quota harvest rates. In light of the foregoing, and
notwithstanding the recent success in defending against a legal
challenge to the 1999 TAC, the more defensible approach is a
reduction in the TAC for the current season.

NMFS should at least include in this rule some interim rebuilding
parameters which demonstrate that a 9.12 million pound TAC is
acceptable. That interim plan could focus on the uncertainty of
biomass estimates, the reasonable expectation that BRD
performance will improve, the availability of the Jones-Davis BRD
(which achieves over 60% reduction in bycatch mortality), and the

---

[1] 26% SPR by the year 2031.

[2] 20% SPR by the year 2019.

GOVERNMENT EXHIBIT **B**

5256

suite of measures already in this rule as well as any other measures which have the effect of reducing overall fishing mortality. Otherwise, the record does not provide a defensible basis for a 9.12 million pound TAC; litigation has been threatened over the TAC, and without some justification for the TAC a claim that the agency is allowing overfishing would be difficult to defend. Note that NMFS scientists have verbally indicated the long term (32 years) effort to rebuild the stock would not be seriously undermined by one additional year at that TAC level, however more severe restrictions would be required thereafter, and the target year may be delayed. This consideration does not appear to have been taken into account in the record.

The coastal zone consistency determinations may be problematic. NMFS may not take final action (promulgate the rule) sooner than 90 days after providing notice of the proposed action to the affected states' coastal zone offices, unless the states agree to a shorter time. NMFS sent the requests on November 19, 1999, but the package does not indicate whether each Gulf state has concurred with either the determination of consistency or the request for a shorter review period.

The rationale for the commercial seasonal adjustments is weak in terms of reducing overfishing, and is somewhat contradicted by the economic analysis of that measure which indicates that it will not be effective in removing the incentive for 'derby fishing.[3]' Reducing derby fishing is the crux of the argument that the measure will reduce overfishing, which is necessary to demonstrate in order to use a interim measure authorized by s. 305(c).

The economic analysis is not summarized in the rule; the draft rule still contains a note to drafters.

See additional minor handwritten edits as noted.

Subject to the foregoing concerns, GCSE clears the rule.

Cc: GCEL/SE
    GCF

---

[3] '...10-day mini-seasons... do not alter the basic incentive to fish as intensively as possible before fishing is halted for the remainder of the year. Fishermen who wait still risk losing the opportunity to harvest larger shares of the overall quota."

Government Exhibit C

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION


GAMFW, INC. DBA FISHERMAN'S WHARF   )
& BOBBY GRUMBLES   )
   )
                     Plaintiffs  )   Civil Action No. C-00-28
v   )
   )
THE UNITED STATES OF AMERICA,   )
THE DEPARTMENT OF COMMERCE,   )
WILLIAM DALEY, SECRETARY and   )
THE NATIONAL MARINE FISHERIES SERVICE   )
                    Defendants)


## AFFIDAVIT OF COUNSEL


COMES NOW, E.V.E. Joy, Attorney Advisor for the National Oceanic & Atmospheric

Administration, Office of General Counsel, Southeast Region, and makes her affidavit regarding

certain facts in this cause as follows:


PROCEDURAL BACKGROUND:

1.     Recreational Fishermen of America, Recreational Fishing Alliance Texas, Recreational

Fishing Alliance National, and Bobby Grumbles filed their original complaint on January 19, 2000.

Process was complete on February 2, 2000.   The suit challenges the National Marine Fisheries

Service's (NMFS) Red Snapper Management Measures Interim Rule & Request for Comments,

\

(the Rule), promulgated pursuant to the Magnuson-Stevens Fisheries Conservation & Management Act, 16 U.S.C. §1801, *et seq.,* (MSA), which modifies recreational and commercial fishing seasons, increases recreational minimum size limit and reinstates a 4-fish bag limit for captain and crew of for-hire vessels. (64 Fed.Reg.71056, December 20, 1999)

2.      This Court entered an Order to Answer and File Administrative Record on January 25, 2000 that compelled the Government to file its Administrative Record by February 20, 2000. This Order, attached as **EXHIBIT A** to the Government's Motion for a Protective Order, was mailed from Texas on January 26, 2000 and was received by the Secretary of Commerce on or about January 31, and, thereafter, was received by the Southeast Regional Office of General Counsel during the first week of February, 2000.

3.      On February 15, 2000, plaintiffs Recreational Fishermen of America, Recreational Fishing Alliance Texas, Recreational Fishing Alliance National, withdrew from the suit and GAMFW, Inc.,[1] d/b/a/ Fisherman's Wharf and Bobby Grumbles filed an Amended Complaint. I am not certain whether process is complete for the Amended Complaint.


    FACTUAL  BACKGROUND

4.      In its effort to comply with the Court's order, NOAA's Office of General Counsel for the Southeast Region immediately assembled an Administrative Record for the challenged Interim Rule (the Record). The Record totaled 18 volumes that contained 8,882 pages. The time allowed for the actual selection and review of these documents was further reduced by the seven days required by the commercial firm that made four complete copies of this record, and one day

---

[1] GAMFW, Inc., was incorporated in Texas on 8.2.1993. Plaintiff Bobby Grumbles is a director.

2

for its re-assembly and transit to the various recipients,[2] leaving an approximate total of nine

business days to assemble, review and index the entire record.[3]

5.      A NMFS employee who was instrumental in preparing the Rule came to the Office of

General Counsel to assist in assembly of the Record.   The documents he selected were then

reviewed by a paralegal for material that might be privileged.   I  reviewed these documents to

determine which would be withheld from the record.   At the end of the Index to the Record is a

list of eighty-two documents withheld from the AR on the basis of privilege.

6.      The paralegal prepared an Index to the Record (the Index) and I then reviewed the entire

record but did not look at each of the 8,882 individual pages.  The Record was Bates-stamped

and sent out of the Office of General Counsel to be copied.

7.      The Record was shipped, via Federal Express, on February 17, 2000 in order to arrive at

its destinations in time to meet the court-ordered deadline.

8.      Subsequently, in order to facilitate finding documents in the Record, the NMFS employee,

the paralegal and I  began to expand the Index, adding additional detail.  The revised Index would

be sent to all recipients of the Record.   After 5PM, on March 8, 2000, during the process of

compiling the more detailed Index, it was discovered that a duplicate of one of the documents

withheld from the record, and identified in the list of Documents Withheld on the Basis of

---

[2]  The four copies were sent to the Court in Texas, counsel for the plaintiffs in Texas, the
Department of Justice in Washington, DC and the Office of General Counsel at NMFS' headquarters
in Maryland.

[3]  The people working to assemble the Record worked over two weekends as did the employees
at the copy center.

Privilege[4], had been inadvertently included in the record at Bates-pages 5256-5257.   I then personally examined each of the 8,882 pages in the Record and ascertained that it contained no other privileged documents,  researched applicable law to determine what procedure to follow and what relief is available, and drafted this Motion for a Protective Order.

Respectfully submitted this _____12th_____ day of March, 2000.

U.S. Department of Commerce
National Oceanic & Atmospheric Administration
Office of General Counsel, Southeast Region

E.V.E.  Joy, Attorney Advisor
Mississippi Bar No.
Rm. 137, 9721 Executive Center Drive, N
St. Petersburg, FL 33702
(727) 570-5372

---

[4] Document #5, a memorandum from the Regional Attorney to Reviewers of the Rule, is clearly labeled    PRIVILEGED & CONFIDENTIAL
                        ATTORNEY WORK PRODUCT
                        ATTORNEY CLIENT COMMUNICATION.

This document is attached as **Exhibit B** to the Motion for a Protective Order.

4