IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| GAMFW, Inc., d/b/a FISHERMAN'S WHARF, and BOBBY GRUMBLES,<br><br>    Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA, et al.,<br><br>    Defendants, and<br><br>COASTAL CONSERVATION ASSOCIATION,<br><br>    Defendant-Intervenor. | United States District Court<br>Southern District of Texas<br>FILED<br><br>**AUG 1 1 2000**<br><br>MICHAEL N. MILBY CLERK<br><br>CAUSE NO. C-00-028 |

## DEFENDANTS' SECOND SUPPLEMENTAL MEMORANDUM REGARDING STATUTORY AUTHORITY TO ADOPT THE DECEMBER 20, 1999 INTERIM MEASURE

On August 10, 2000, this Court instructed defendants to submit the following information to the Court.

1. Evidence of Administrative Actions by the State Resource Agencies for the States of Florida, Alabama, Louisiana, and Mississippi which Indicates that these State Resource Agencies Adopted Regulations for the 2000 Red Snapper Recreational Fisheries in State Waters which were Compatible with the NMFS December 20, 1999 Interim Measure for the National Marine Fisheries Service ("NMFS") Red Snapper Recreational Fishery in the Exclusive Economic Zone ("EEZ").

    A. <u>Florida</u>: Recreational Red Snapper Season, 68 FL ADC 68B-14.0038 as amended on December 30, 1999 (Copy Attached as Attachment 1);

66.

    B.    <u>Alabama</u>: Open Season for Recreational Red Snapper, AL ADC 220-3-.46 as amended on March 21, 2000 (Copy Attached as Attachment 2);

    C.    <u>Louisiana</u>: Declaration of Emergency by Department of Wildlife and Fisheries regarding 2000 Recreational Red Snapper Season, Louisiana Register Vol. 25, No. 12, December 20, 1999 (Copy Attached as Attachment 3); and

    D.    <u>Mississippi</u>: Legal Notice, Order Opening Recreational Red Snapper Season, dated April 6, 2000 (Copy Attached as Attachment 4).

2.  Administrative Record Citations which Support Statement that "NMFS' Estimated that Management under the Sept. 1, 2000 Rule could result in Continued State Harvests during the Federal Closures of over 600,000 Pounds."

    A.    AR 8879: Interim Rule, 64 <u>Fed</u>. <u>Reg</u>. 71056, 71059 (Copy Attached as Attachment 5);

    B    AR 5493: Decision Memorandum (Copy Attached as Attachment 6);

    C.    AR 5429: Environmental Assessment (Copy Attached as Attachment 7);

    D.    AR 5445: Environmental Assessment ("Estimates of Gulfwide red snapper harvests (pounds) from State waters are: January = 73,000; February = 71,000; March = 116,000; April = 107,000; August = 158,000; September = 133,000; October = 121,000; November = 112,000; and December = 108,000 (from Schirripa (1999)[1] and Schirripa and Legault (1997). Status quo management may

---

[1]    Schirripa (1999) refers to a computer model developed by Michael Schirripa to forecast Red Snapper landings under different management scenarios. Reference to this model is found at AR 5452. In 1999, Michael Schirripa also co-authored the Red Snapper Stock Assessment

(continued...)

result in some amount of continued harvest from State waters during August through December as has previously occurred in the 1997-99 season. This could result in over 600,000 pounds of excess harvest that could be avoided with compatible regulations.") (Copy Attached as Attachment 8).

Respectfully submitted this August 10, 2000,

        MERVYN M. MOSBACKER
        United States Attorney
        Southern District of Texas

        LARRY LUDKA
        Assistant United States Attorney

        LOIS J. SCHIFFER
        Assistant Attorney General
        JEAN WILLIAMS, Chief
        SETH M. BARSKY, Assistant Chief

        ALLISON AREIAS, DC Bar # 453909

        */s/ Matthew A. Love*

        MATTHEW A. LOVE
        United States Department of Justice
        Environment and Natural Resources Division
        Wildlife and Marine Resources Section
        P.O. Box 7369
        Washington, D.C. 20044-7369
        Tel: (202) 305-0229
        Fax: (202) 305-0275

        ANTHONY P. HOANG

---

[1]/(...continued)
found at AR 3231.

GEOFFREY GARVER
CAROLINE BLANCO
United States Department of Justice
Environment and Natural Resources Division
General Litigation Section
Washington, D.C. 20044-0663

Attorneys for Defendants

OF COUNSEL:
MICHAEL McLEMORE
E.V.E. JOY
CONSTANCE SATHRE
NOAA Office of the General Counsel

                                                                              Page 1

Citation              Search Result        Rank 169 of 192        Database
68 FL ADC 68B-14.0038                                             FL-ADC
 Rule 68B-14.0038, F.A.C.
 Fla. Admin. Code Ann. r. 68B-14.0038

TEXT
                   FLORIDA ADMINISTRATIVE CODE ANNOTATED
         TITLE 68.  FISH AND WILDLIFE CONSERVATION COMMISSION
                     SUBTITLE 68B.  MARINE FISHERIES
                        CHAPTER 68B-14.  REEF FISH
                       Current through June 1, 2000.

68B-14.0038 Recreational Red Snapper Season.

  In all state waters of the Gulf of Mexico, the season for the recreational
harvest and possession of red snapper shall be from April 15 through October 31,
each year. Except for persons harvesting red snapper for commercial purposes
pursuant to Rule 68B-14.0045, F.A.C., from November 1 through April 14, no
person shall harvest in or from state waters of the Gulf of Mexico, nor possess
while in or on state waters of the Gulf of Mexico, any red snapper
CREDIT


Specific Authority Art. IV, Sec. 9, Fla. Const. Law Implemented Art. IV, Sec. 9,
Fla. Const. History--New 10-20-98, Formerly 46-14.0038, Amended 12-30-99.
  68 FL ADC 68B-14.0038
END OF DOCUMENT

                 Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

                                                                    EXHIBIT
                                                                       1

08/10/00 15:19 FAX 2023050275     DOJ-WILDLIFE SECTION                    ☐008/018

                                                                          Page 2

Citation            Search Result         Rank 7 of 7              Database
AL ADC 220-3-.46                                                   AL-ADC
  Ala. Admin. Code r. 220-3-.46

TEXT

ALABAMA ADMINISTRATIVE CODE
ALABAMA DEPARTMENT OF CONSERVATION AND NATURAL RESOURCES
GENERAL PROVISIONS
CHAPTER 220-3. MARINE RESOURCES DIVISION
COPYRIGHT (C) 2000 BY STATE OF ALABAMA. ALL RIGHTS RESERVED
Current through March 31, 2000

220-3-.46. Open Season For Recreational Red Snapper.

Effective 12:01 a.m., April 21, 2000, through October 31, 2000, all state waters shall be open to recreational red snapper fishing.

AUTHOR:

Riley Boykin Smith

STATUTORY AUTHORITY:

Code of Ala. 1975, §§ 9-2-4, 9-2-7, 9-2-8, 9-2-12.

HISTORY:

New Rule (PE): Filed March 21, 2000; effective March 21, 2000.
AL ADC 220-3-.46
END OF DOCUMENT

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

EXHIBIT
2

AUTHORITY NOTE: Promulgated in accordance with R.S. 47:1835 and R.S. 47:1838.

HISTORICAL NOTE: Promulgated by the Department of Revenue and Taxation, Tax Commission LR 19:212 (February 1993), amended LR 20:198 (February 1994), amended by the Department of Revenue, Tax Commission, LR 24:494 (March 1998), LR 25:320 (February 1999), LR 26:

Malcolm B. Price, Jr
Chairman

9912#063

## DECLARATION OF EMERGENCY

### Department of Wildlife and Fisheries
### Wildlife and Fisheries Commission

### 2000 Recreational Red Snapper Season

The red snapper fishery in the Gulf of Mexico is cooperatively managed by the Department of Wildlife and Fisheries (LDWF), the Wildlife and Fisheries Commission (LWFC) and the National Marine Fisheries Service (NMFS) with advice from the Gulf of Mexico Fishery Management Council (Gulf Council). Regulations promulgated by NMFS are applicable in waters of the Exclusive Economic Zone (EEZ) of the U.S., which in Louisiana is generally three miles offshore. Rules were recently established by NMFS to close recreational harvest season in the EEZ off of Louisiana effective 12:01 a.m., August 29, 1999 through December 31, 1999 by reducing the bag limit to zero, and NMFS requested that consistent regulations be established in Louisiana waters. At the November meeting of the Gulf Council, NMFS was requested by the Council to re-set the opening date of the 2000 recreational red snapper season in April 2000 and change the recreational minimum size limit from 15 to 16 inches total length. NMFS subsequently has announced its intention to open the season on April 21, 2000. NMFS typically requests consistent regulations in order to enhance the effectiveness and enforceability of regulations for EEZ waters.

In order to enact regulations in a timely manner so as to have compatible regulations in place in Louisiana waters for the 2000 recreational red snapper season, it is necessary that emergency rules be enacted.

In accordance with the emergency provisions of R.S. 49:953(B), the Administrative Procedure Act, R.S. 49:967 which allows the Wildlife and Fisheries Commission to use emergency procedures to set finfish seasons, and R.S. 56:326.3 which provides that the Wildlife and Fisheries Commission may set seasons and size limits for saltwater finfish; the Wildlife and Fisheries Commission hereby sets the following seasons for recreational harvest of red snapper in Louisiana state waters.

The season for the recreational fishery for red snapper in Louisiana state waters will remain closed through April 20, 2000 by reducing the bag limit to zero for that time period. The season will open at 12:01 a.m., April 21, 2000 and continue through October 31, 2000. The minimum size limit for recreational red snapper is 16 inches total length. If the secretary is notified that the opening and closing of Federal seasons is changed, he is hereby authorized to change the opening and closing dates for state waters accordingly.

Bill A. Busbice, Jr.
Chairman

9912#022

## DECLARATION OF EMERGENCY

### Department of Wildlife and Fisheries
### Wildlife and Fisheries Commission

### 2000 Red Snapper Commercial Season and Size Limits

The red snapper fishery in the Gulf of Mexico is cooperatively managed by the Department of Wildlife and Fisheries (LDWF) and the National Marine Fisheries Services (NMFS) with advice from the Gulf of Mexico Fishery Management Council (Gulf Council). Regulations promulgated by NMFS are applicable in waters of the Exclusive Economic Zone (EEZ) of the U.S., generally three miles offshore. NMFS will provide rules for commercial harvest seasons for red snapper in the EEZ off of Louisiana. NMFS and the Gulf Council typically request consistent regulations in order to enhance the effectiveness and enforceability of regulations for EEZ waters.

The 2000 commercial red snapper fishery in EEZ waters is expected to operate under two sets of seasonal openings, one beginning February 1 and one beginning October 1. During the first season, the fishery will open at noon of the first day of each month, and close at noon on the tenth day of each month, until the allotted portion of the commercial red snapper quota has been harvested. Two-thirds of the annual commercial quota has been allotted to the first set of seasonal openings that begins in February, and the remainder of the quota will be allotted to the second set of openings that begin in October. During the second season, the fishery will open at noon of the first day of each month, and close at noon on the tenth day of each month, until the allotted portion of the commercial red snapper quota has been harvested. In order to enact regulations in a timely manner so as to have compatible regulations in place in Louisiana waters for the 2000 commercial red snapper season, it is necessary that emergency rules be enacted.

The minimum size limit for commercially harvested red snapper is 15 inches total length.

In accordance with the emergency provisions of R.S. 49:953(B), the Administrative Procedure Act, R.S. 49:967 which allows the Wildlife and Fisheries Commission to use emergency procedures to set finfish seasons, and R.S. 56:326.3 which provides that the Wildlife and Fisheries Commission may set seasons for saltwater finfish; the Wildlife and Fisheries Commission hereby sets the following season for commercial harvest of red snapper in Louisiana state waters:

The season for the commercial fishery for red snapper in Louisiana state waters will open at 12:00 noon February 1, 2000. The commercial fishery for red snapper in Louisiana waters will close at 12:00 noon February 10, 2000, and thereafter open at 12:00 noon on the first of each month and

EXHIBIT 3

close at 12:00 noon on the tenth of each month, for each month of 2000 until two-thirds (2/3) of the 2000 commercial red snapper quota for the Gulf of Mexico has been harvested or projected to be harvested.

The Commission grants authority to the Secretary of the Department of Wildlife and Fisheries to change the closing dates for the commercial red snapper season in Louisiana state waters when he is informed that two-thirds (2/3) of the commercial red snapper quota for the Gulf of Mexico has been harvested or projected to be harvested, such closure order shall close the season until 12:00 noon October 1, 2000, which is the date expected to be set for the re-opening of the 2000 commercial red snapper season in Federal waters.

The season for the commercial fishery for red snapper in Louisiana state waters will re-open at 12:00 noon October 1, 2000. The commercial fishery for red snapper in Louisiana waters will close at 12:00 noon October 10, 2000, and thereafter open at 12:00 noon on the first of each month and close at 12:00 noon on the tenth of each month for each month of 2000, until the remainder of the 2000 commercial quota is harvested.

The Commission grants authority to the Secretary of the Department of Wildlife and Fisheries to change the closing dates for the commercial red snapper season in Louisiana state waters when he is informed that the commercial red snapper quota for the Gulf of Mexico has been harvested or projected to be harvested; such closure order shall close the season until the date set for the opening of the year 2001 commercial red snapper season in Federal waters.

The Commission also grants authority to the Secretary of the Department of Wildlife and Fisheries to change the opening dates for the commercial red snapper season in Louisiana state waters if he is informed by the Regional Administrator of NMFS that the season dates for the commercial harvest of red snapper in the federal waters of the Gulf of Mexico as set out herein have been modified, and that the Regional Administrator of NMFS requests that the season be modified in Louisiana state waters.

Nothing herein shall preclude the legal harvest of red snapper by legally licensed recreational fishermen. Effective with any closure, no person shall commercially harvest, transport, purchase, barter, trade, sell or attempt to purchase, barter, trade or sell red snapper. Effective with the closure, no person shall possess red snapper in excess of a daily bag limit. Provided however that fish in excess of the daily bag limit which were legally taken prior to the closure may be purchased, possessed, transported, and sold by a licensed wholesale/retail dealer if appropriate records in accordance with R.S. 56:306.5 are properly maintained, and those other than wholesale/retail dealers may purchase such fish in excess of the daily bag limit from wholesale/retail dealers for their own use or for sale by a restaurant as prepared fish.

Bill A. Busbice, Jr.
Chairman

9912#024



# MISSISSIPPI
# DEPARTMENT OF MARINE RESOURCES



## LEGAL NOTICE

## ORDER OPENING RECREATIONAL RED SNAPPER SEASON

Under the authority of § 49-15-15 1 (a) of the Mississippi Code of 1972, and Order of the Mississippi Commission on Marine Resources, dated November 18, 1997, the Commission acting through the Executive Director of the Department of Marine Resources does hereby order that:

The recreational fishing season for red snapper (*Lutjanus campechanus*) shall open in Mississippi territorial waters at 12:01 a.m., April 21, 2000.

Ordered this Thursday, the 6th day of April 2000.

*W.F. Doogan for*

E G Woods
Executive Director

the matter not subject to consistency review. The Texas Coastal Coordination Council (TCCC) determined the interim rule to be inconsistent with Texas' CMP based on its belief that the rule conflicts with the goals of 31 TAC 501.12(2) and (8). Paragraphs (2) and (8) of 31 TAC 501.12 are similar to National Standards for Fishery Conservation and Management Two and Eight of the Magnuson-Stevens Act (16 U.S.C. 1851(a)(2) and (8)). The TCCC also believed the rule to be inconsistent with Magnuson-Stevens Act National Standards Two, Four, Six, Eight, and Ten. The TCCC urged special regulations for the red snapper fishery off Texas, without suggesting any specifics.

NMFS disagrees with the TCCC, and responded by letter dated December 14, 1999, that, to the maximum extent practicable with the requirements of Magnuson-Stevens Act National Standards One, Two, Three, Four, Six, Eight, and Ten (16 U.S.C. 1851(a)(1), (2), (3), (4), (6), (8), and (10)), the interim rule is consistent with Texas' CMP. While the Council plans to examine the issue of separate management measures for the waters off the coast of Texas, the present administrative record does not support the existence of a separate red snapper fishery there.

National Standard Two (16 U.S.C. 1851(a)(2)) requires that management measures be based on the best scientific information available. National Standard Three (16 U.S.C. 1851(a)(3)) requires that a stock of fish be managed as a unit throughout its range. The stock of Gulf of Mexico red snapper ranges throughout the Gulf of Mexico, with no separate stock as yet scientifically identified off the Texas coast. National Standard Four (16 U.S.C. 1851(a)(4)) prohibits discrimination between residents of different states and requires inter alia, that the allocation of fishing privileges among United States fishermen be fair and equitable. The measures in this interim rule, particularly the recreational fishing season, are consistent with longstanding historical fishing practices of all participants in the Gulf of Mexico red snapper fishery, including Texas fishermen.

With respect to National Standard Eight (16 U.S.C. 1851(a)(8)), the interim rule preserves recreational fishing opportunities for Texas fishing communities during the months of greatest historical demand. In addition, opening the recreational fishery during winter months is not practicable since it would result in an earlier fishery closure and decrease the likelihood of compatible regulations among most Gulf coastal States, which, in turn, would increase the likelihood of recreational quota overruns and overfishing, which is prohibited by National Standard One (16 U.S.C. 1851(a)(1)). Similarly, the rule preserves commercial fishing opportunities as well. With respect to National Standard Ten (16 U.S.C. 1851(a)(10)), the interim rule is not likely to affect safety at sea adversely since the commercial 10-day monthly seasons will actually reduce the incentive for a derby fishery.

National Standard Six (16 U.S.C. 1851(a)(6)) requires consideration of, and allowance for, variations and contingencies in fisheries, fishery resources and catches. TCCC believes that there is a higher release mortality rate for red snapper in the deeper waters of the western Gulf of Mexico and that NMFS has not taken this into consideration. NMFS used a release mortality rate of 20 percent for the recreational fishery based upon the best scientific information available, as required by National Standard Two. The administrative record does not contain sufficient documentation of, or scientific bases for, using higher release mortality rates.

Because prior notice and an opportunity for public comment are not required to be provided for this rule by 5 U.S.C. 553 or any other law, the analytical requirements of the Regulatory Flexibility Act, 5 U.S.C. 601 et seq. are inapplicable.

NMFS prepared an economic analysis of the expected regulatory impacts of the interim rule. NMFS analyzed commercial fishing derbies during the last decade to determine the probable economic consequences of commercial spring and fall seasons consisting of a series of 10-day mini-derbies during the year 2000. NMFS concluded that a series of 10-day commercial derbies conducted under a 9.12 million-lb (4.14 million-kg) TAC could measurably increase the average total and net revenues for the year compared to 15-day openings. Shorter mini-seasons during 1998–99 reduced landings per month, supported higher ex-vessel prices, and extended domestic supplies. The expected economic consequences for the recreational sectors are less definite because of uncertainties regarding the recreational catch that may be realized versus recreational catches that can be forecast with available data.

If the changes in the recreational fishery regulations, which include an April 21 to October 31 season and an increase in the size limit to 16 inches (40.6 cm), result in catches that are no greater than the recreational quota, then NMFS expects an increase in net benefits for all portions of the recreational fishery in aggregate. However, if the realized catches exceed the quota, then longer-term benefits will be reduced because stock recovery will be slowed by an indeterminate amount. In theory, if the management measures in this interim rule are very different from the management measures preferred by the Gulf states, it is unlikely that the Gulf states will adopt compatible regulations. Under incompatible Federal and state regulations, harvests will probably continue in state waters after Federal closures. These harvests will impede stock rebuilding efforts. Under the existing management scheme, for example, harvests during the Federal closures could exceed 600,000 lb (272,155 kg) during a fishing year. The Gulf states are more likely to adopt any scenario approximating the Council's requested season of April 15–October 31, thus reducing the negative effects of incompatible Federal and state rules.

Copies of the economic analysis are available upon request (see ADDRESSES).

This interim rule addresses overfishing. In the past, the lack of compatible management of the red snapper fishery by most Gulf states resulted in continued fishing in state waters after Federal waters were closed. This contributed to quota overruns and overfishing. NMFS anticipates that four of the five Gulf states will adopt measures compatible with the measures of this interim rule. This will enhance the effectiveness of the closed seasons and will significantly reduce the probability of overfishing. The increase in the recreational minimum size limit will reduce the harvest rate and, in combination with the bag limit and closed seasons, will help ensure that the recreational quota is not exceeded and that overfishing does not occur. Reducing the openings of the commercial fishery from 15 days per month to 10 days per month will slow the harvest rate and reduce the probability of exceeding the commercial quota and overfishing. Reinstating the 4-fish bag limit for captain and crew of for-hire vessels relieves a restriction on that sector of the fishery. The Council provided public notification in the Federal Register on October 25, 1999, of the red snapper issues that would be considered at its November 8–12, 1999, Council meeting and afforded the public the opportunity at that meeting to comment on the measures contained in this interim rule. Delaying action to reduce overfishing in the red snapper fishery of the Gulf of Mexico to provide further notice and an opportunity for



expectation is for an increase in net benefits for all portions of the recreational fishery in aggregate. However, if the realized catches are in excess of the quota, then longer term benefits will be reduced because stock recovery will be slowed by an indeterminate amount. In theory, the greater the divergence of the interim rule from that desired by the Gulf states, the greater the likelihood of non-adoption of compatible regulations, thereby leading to continued harvests during Federal closures and subsequent effects on stock rebuilding. Status quo management, for example, could result in continued harvests during the Federal closures of over 600,000 pounds. Any scenario approximating the requested season of April 15-October 31, should have a greater chance of being adopted by the Gulf states, thus reducing negative effects of incompatible rules.

CONTROVERSY

Considerable controversy regarding changes in the recreational fishery is expected. The Council recommended no change to the status quo TAC of 9.12 million pounds; thus this interim rule does not address or alter the status quo TAC. However, the status quo TAC of 9.12 million pounds will be opposed by the shrimp industry and by environmental groups, who will request reductions in TAC by interim rule. Any reduction in TAC would be extremely controversial and would be expected to cause considerable Congressional interest. Any decision on TAC is also likely to result in litigation. NMFS has received written notice of potential litigation from the shrimp industry if TAC is not reduced, while the for-hire industry has threatened to sue if TAC is reduced. The discrepancy in the minimum size limits in the commercial fishery (15 inches) and recreational fishery (16 inches proposed) will be objected to by the recreational groups, who are expected to regard the discrepancy as unfair and demand an increase in the commercial size limit. However, I feel the discrepancy is justified based on the difference in release mortality rates in the two sectors and the benefits from extending the recreational season. The change in the opening and closures dates of the recreational season will be controversial and may result in litigation from the South Texas for-hire sector, which has requested a year-round fishery and also expressed a need for a winter fishery. The Council considered adding either a January-February opening with a reduced bag limit or a separate sub-quota for Texas to allow a winter fishery in response to requests from Texas representatives, but the Council concluded that there was no way to do so without substantially shortening the prime April to October season. Shortening the April 21 to October 31 season would increase the likelihood that illegal fishing during the closed season would occur, resulting in overfishing of the recreational quota. The changes in the commercial season are not expected to be controversial.

7





5493
EXHIBIT 6

would be exceeded before NMFS would be able to assess landings data and close the fishery. In addition, the 15-day fishing period would temporarily increase the supply of fish, depress market prices, and reduce economic benefits to the industry.

### Economic Consequences of the Interim Rule

Summary: An analysis of commercial fishing derbies during the last decade was conducted in order to determine the probable economic consequences of having the commercial spring and fall seasons consist of a series of 10-day mini derbies during the year 2000. The basic conclusion of the analysis, based on available data, is that the series of 10-day commercial derbies is expected to result in a measurable increase in total and net revenues for the year 2000 relative to revenues in previous years with a 9.12 million pound TAC. For example, shorter mini-seasons during 1998-99 reduced landings per month, supported higher ex-vessel prices, and extended domestic supplies. The expected economic consequences for the recreational sectors are less certain because of uncertainties regarding the recreational catch that may be realized versus recreational catches that can be forecast with available data. If the changes in the recreational regulations, which include an April 21 to October 31 season and an increase in the size limit to 16 inches, result in catches that are no greater than the recreational quota, then the expectation is for an increase in net benefits for all portions of the recreational fishery in aggregate. However, if the realized catches are in excess of the quota, then longer term benefits will be reduced because stock recovery will be slowed by an indeterminate amount. In theory, the greater the divergence of the interim rule from that desired by the Gulf states, the greater the likelihood of non-adoption of compatible regulations, thereby leading to continued harvests during Federal closures and subsequent effects on stock rebuilding. Status quo management, for example, could result in continued harvests during the Federal closures of over 600,000 pounds. Any scenario approximating the requested season of April 15-October 31, should have a greater chance of being adopted by the Gulf states, thus reducing negative effects of incompatible rules.

Economic Consequences of an Interim Rule to Implement Changes in Management Regulations for Red Snapper in the Exclusive Economic Zone of the Gulf of Mexico

Introduction: The interim rule modifies regulations governing the commercial and recreational take of red snapper in the following manner. The recreational fishing season will be open from April 21 to October 31. The commercial spring season will open in the EEZ starting at noon February 1 until noon on February 10 and thereafter from noon on the first day of each succeeding month to noon on the 10th day of the month until two thirds of the commercial quota is reached. The interim rule

9



5429


EXHIBIT 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| GAMFW, INC. D/B/A FISHERMAN'S WHARF and BOBBY GRUMBLES,<br><br>  Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA, et al.<br><br>  Defendants. | CAUSE NO. C-00-028 |

## CERTIFICATE OF SERVICE

I hereby certify that the Defendants' Second Supplemental Memorandum Regarding Statutory Authority to Adopt the December 20, 1999 Interim Measure was served via U.S. mail and facsimile this 10th day of August 2000 to the following:

>Les Cassidy
>Woolsey & Cassidy
>500 N. Water Street, Suite 1020 North
>Corpus Christi, Texas 78471
>
>Robert Hayes
>Ball Janik, LLP
>1455 F Street, N.W., Suite 225
>Washington, D.C. 20005
>
>Bruce Hawn, Esq.
>The Kleberg Law Firm
>Suite 900, North Tower
>800 N. Shoreline Boulevard
>Corpus Christi, Texas 78401-3709
>(361) 693-8500 - voice
>(361) 693-8600

Matthew A. Love

the overage estimates are based is not currently capable of fully capturing or anticipating all determinants of actual harvest. For example, the 1998 fishery was closed in late September based on a projection of having met the 4.7 million pound recreational allocation. The current estimate of 1998 recreational red snapper harvest exceeds 5.5 million pounds, or an overage of over 1.0 million pounds (final headboat estimates have not been released; if headboat harvest approaches historic levels, total harvest will be approximately 6.0 million pounds). Contributing to this overage was the lack of compatible regulations in State waters and a recent adjustment of Texas harvest estimates (Osborn, 1999). The 1999 season was closed in late August, again based on an expectation of meeting the allocation, yet preliminary estimates of January through August harvest exceed 5 million pounds, with final estimates expected to increase due to continued harvest after August in unclosed State waters off Texas, Alabama and Florida. In addition to continued fishing in State waters, these increased harvests are likely due to increased harvest rates due to the growing stock and expansion of range as well as reallocation of effort from closed to open seasons, all factors which are difficult if not impossible to fully capture in the harvest projection model.

It is thus unclear what effect, if any, the projected overages contained in IR scenarios 1, 3 and 5 will have on future benefits and to what degree these overages should be factors in determining the preferred alternative for the 2000 fishery. However, consideration should be given to the benefits associated with adoption of compatible State regulations and the likelihood that such will occur in the event of implementation of either of the IR scenarios. In theory, the greater the divergence of the implemented rule from that desired by the States, the greater the likelihood of non-adoption of compatible regulations, thereby leading to continued harvests during Federal closure and subsequent overages and deviation from necessary recovery paths. As a proposal put forward by the GMFMC thereby producing the underlying assumption of State support, any scenario approximating the requested season of April 15 through October 31 in theory stands the greatest chance of being adopted by the States, thus eliminating or at least reducing the negative effects of incompatible regulations. Estimates of Gulfwide red snapper harvests (pounds) from State waters are: January=73,000; February=71,000; March=116,000; April=107,000; August=158,000; September=133,000; October=121,000; November=112,000; and December=108,000 (from Schirripa (1999) and Schirripa and Legault (1997)). Status quo management may result in some amount of continued harvest from State waters during August through December, as has previously occurred in the 1997-99 seasons. This could result in over 600,000 pounds of excess harvest that could be avoided with compatible regulations. Similar problems could occur with excessive deviation from an April 15 opening resulting in non-closure of State waters during a portion of

25

5445


EXHIBIT 8

January through April, again resulting in a potential harvest excess of 500,000 pounds.

Addendum

Subsequent information provided by the NMFS Southeast Science Center (NMFS SEFSC, 1999) certify that the potential overages discussed above are within the error bounds of harvest projection. As such, said overages will not jeopardize the recovery path of the stock and should not form the basis for selecting one IR scenario over another. IR Scenario (5) is therefore preferred over status quo in that it approximates the season proposed by the Council while accommodating the additional harvest expected to accrue to a reinstatement of the 4-fish captain and crew limit, will accommodate stock recovery requirements, will allow increased target trips, will allow approximately equal consumer surplus from red snapper trips, will result in fewer trip cancellations, and will result in less foregone for-hire gross revenues due to trip cancellations.

26

5446