UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

United States District Court
Southern District of Texas
FILED

AUG 10 2000

Michael N. Milby, Clerk

|  |  |  |
|---|---|---|
| GAMFW, INC. D/B/A FISHERMAN'S WHARF and BOBBY GRUMBLES | ) ) ) | |
| Plaintiffs, | ) ) | CAUSE NO. C-00-028 |
| v. | ) ) | |
| THE UNITED STATES OF AMERICA, et al. | ) ) ) | |
| Defendants. | ) ) ) | |

## CERTIFICATE OF SERVICE

I hereby certify that the Defendants Supplemental Memorandum Regarding

Statutory Authority to Adopt the December 20, 1999 Interim Measure was served via facsimile

this 8th day of August 2000 to the following:

Les Cassidy
Woolsey & Cassidy
500 N. Water Street, Suite 1020 North
Corpus Christi, Texas 78471

Robert Hayes
Ball Janik, LLP
1455 F Street, N.W., Suite 225
Washington, D.C. 20005

Bruce Hawn, Esq.
The Kleberg Law Firm
Suite 900, North Tower
800 N. Shoreline Boulevard
Corpus Christi, Texas 78401-3709
(361) 693-8500 - voice
(361) 693-8600



Matthew A. Love

CutePDF - www.fastio.com

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| GAMFW, Inc., d/b/a FISHERMAN'S WHARF, and BOBBY GRUMBLES,     ) | |
|     ) | |
| Plaintiffs,     ) | |
|     ) | |
| v.     ) | CAUSE NO. C-00-028 |
|     ) | |
| THE UNITED STATES OF AMERICA, et al.,     ) | |
|     ) | |
| Defendants, and     ) | |
|     ) | |
| COASTAL CONSERVATION ASSOCIATION,     ) | |
|     ) | |
| Defendant-Intervenor.     ) | |

## DEFENDANTS' SUPPLEMENTAL MEMORANDUM REGARDING STATUTORY AUTHORITY TO ADOPT THE DECEMBER 20, 1999 INTERIM MEASURE

During an August 3, 2000 conference call, this Court instructed defendants to submit to the Court by 9 a.m. on August 9, 2000 a memorandum explaining whether section 305(c) of the Magnuson-Stevens Fishery Conservation and Management Act ("MSA"),16 U.S.C. § 1855(c), provided National Marine Fisheries Service ("NMFS") with statutory authority to adopt the December 20, 1999 interim fishery management rule ("Interim Rule") for the Gulf of Mexico red snapper fishery. Pursuant to that instruction, defendants submit this supplemental memorandum.

During the August 3 status hearing, the Court expressed particular concern that NMFS' authority under the MSA's Section 305(c)(1) is limited to issuing emergency regulations or interim measures only when necessary to address **"emergency overfishing."** Thus, to the extent NMFS predicated its issuance of its Interim Rule on the ground that it was necessary to address overfishing only, as opposed to an "emergency" or "emergency overfishing," the Court

expressed concern that NMFS' reliance on MSA's Section 305(c)(1) as the statutory basis for issuing the Interim Rule exceeded the authority afforded NMFS under the section.

As shown below, NMFS believes that the Court's concern may stem in part from a typographical error in the United States Code Annotated ("U.S.C.A.") as published by West Publishing. To the extent the Court is relying on the language printed in the U.S.C.A, the U.S.C.A. does not accurately reflect the public law as passed by Congress and signed by the President that added the relevant language to the MSA in 1996, nor does it comport with the official version of the United States Code. The public law as passed (and published in the official United States Code) amended the then-existing MSA's Section 305(c)(1) to provide NMFS with the authority to "promulgate emergency regulation or interim measures necessary to address the emergency **or** overfishing," not "emergency overfishing" as incorrectly stated in the U.S.C.A.[1/]

To the extent that the Court otherwise questions NMFS's rulemaking authority, defendants respectfully submit that an analysis of the plain language and context of the correct version of the MSA's Section 305(c)(1) demonstrates that Congress authorized NMFS to use Section 305(c)(1) to address <u>either</u> an emergency <u>or</u>, as here, overfishing. Moreover, NMFS' use of an Interim Rule was appropriate here because, as demonstrated by the record, the red snapper fishery is "overfished" and the measures imposed through the Interim Rule are necessary to address that overfishing. Finally, the record also demonstrates that NMFS had good cause within the meaning of the Administrative Procedure Act (APA") to proceed with the Interim Rule

---

[1/] NMFS did not realize this discrepancy between the public law as enacted and the U.S.C.A. rendition of that provision until after the status hearing with the Court on August 3.

-2-

without prior notice and comment.

## STANDARD OF REVIEW

The issue of the scope of NMFS' authority under section 305(c)(1) presents a threshold issue of statutory construction. When faced with a question of statutory construction, the Supreme Court and Fifth Circuit have stated a now-familiar two-part test for review of an agency's interpretation of a statute which it administers. Chevron U.S.A., Inc. v. NRDC, 467 U.S. 837, 843 (1984). Under the first part of this test, the court must consider whether Congress has "directly addressed the precise question at issue." Id. If so, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. at 842-43. However, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Id. at 843; see also Fort Hood Barbers Ass'n v. Herman, 137 F.3d 302, 307-308 (5th Cir. 1998). To uphold NMFS's interpretation, "[the court] need not find that it is the only permissible construction that [the agency] might have adopted but only that [the agency's] understanding of [the] complex statute is a sufficiently rational one to preclude a court from substituting its judgment for that of [the agency]." Chemical Manufacturers Ass'n v. NRDC, 470 U.S. 116, 125 (1985); see also Chemical Manufacturers Ass'n v. EPA, 870 F.2d 177, 198 (5th Cir. 1989).

In this case, the statutory provisions at issue were for the most part newly enacted as part of the Sustainable Fisheries Act Amendments of 1996, and have not yet been subject to substantial review in the courts. "[I]n general a court defers to the interpretation of a new statute by the agency that is charged with putting it into effect, meshing the wheels, and that presumably

-3-

has some awareness of the approaches of legislators particularly concerned with the legislation."

Alabama Power Co. v. Costle, 636 F.2d 323, 353 (D.C. Cir. 1979).

For challenges to NMFS' actions under the MSA, the Court is required to apply the traditional APA deferential arbitrary and capricious standard of review. This is a highly deferential standard under which the Secretary's action in this case is presumed to be valid. Associated Fisheries of Maine v. Daley, 127 F.3d 104, 109 (1st Cir. 1997); Chemical Manufacturer's Ass'n, 870 F.2d at 199. Under this standard, the court is to set the action aside only if the Secretary's decision was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law. Marsh v. Oregon Natural Resources Council, 490 U.S. 360 (1989); Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402 (1971).

The court's only function is to determine whether the Secretary "has considered the relevant factors and articulated a rational connection between the facts found and the choice made." Washington Crab Producers, Inc. v. Mosbacher, 924 F.2d 1438, 1441 (9th Cir. 1990) (citing Baltimore Gas & Elec. Co., v. Natural Resources Defense Council, 462 U.S. 87, 105 (1983)). The Court is not to substitute its judgment for that of the Secretary. Marsh v. Oregon Natural Resources Council, 490 U.S. 360, 378 (1989).

## ARGUMENT

A.   **NMFS need not find Emergency Overfishing in Order to Promulgate Interim Measures Necessary to Address Overfishing**.

Section 305(c) of the Magnuson Steven Act ("MSA") provides NMFS with the authority to "promulgate emergency regulation or interim measures necessary to address the **emergency or overfishing.**" 16 U.S.C. § 1855(c) (emphasis added). This statutory authority to promulgate

-4-

interim measures to address overfishing is based upon the 1996 amendments to the MSA enacted

by Congress by the Sustainable Fisheries Act ("SFA"). SFA, Public Law 104-297. Although the

current U.S. Code accurately reflect these amendments, the current edition of the U.S. Code

Annotated published by West Publishing Company does not accurately reflect these changes.

Where a conflict in language exists, the U.S. Code governs. See U.S. Nat. Bank of Oregon v.

Independent Ins. Agents of America, Inc., 113 S.Ct. 2173, 2179 (1993) (appearance of provision

in current edition of United States Code is prima facie evidence that provision has force of law).

Section 1855(c)(1) of Title 18 of the current official U.S. Code, states:

(c) Emergency actions and interim measures

(1)     If the Secretary finds that an emergency exists or that interim measures are
needed to reduce overfishing for any fishery, he may promulgate
emergency regulations or interim measures necessary to address **the
emergency or overfishing,** without regard to whether a fishery
management plan exists for such fishery.

16 U.S.C. § 1855(c)(1) (emphasis added) (copy attached as attachment 1);

Prior to 1996, the MSA's Section 305(c)(1), 16 U.S.C. § 1855(c)(1), provided in relevant

part:

(c) Emergency Actions

(1) If the Secretary finds that an emergency exists involving any fishery he may
promulgate emergency regulations necessary to address the **emergency,** without
regard to whether a fishery management plan exists for such fishery.

16 U.S.C. § 1855(c) (1995)(emphasis added) (copy attached as attachment 2).

The SFA's Section 110 amended the Magnuson-Steven Act's ("MSA") Section 305(c),

16 U.S.C. § 1855(c), as follows:

Section 305(c) (16 U.S.C. 1855(c)) is amended –

-5-

(1)     in the heading by striking "ACTIONS" and inserting "ACTIONS AND INTERIM MEASURES";

(2)     in paragraphs (1) and (2) –

(A)     by striking "involving" and inserting "or that interim measures are needed to reduce overfishing for";

(B)     by inserting "or interim measures" after "emergency regulation" each place such term appears;

(C)     **by inserting "or overfishing" after "emergency";**

and . . . [amendments to paragraph 3]

SFA, Public Law 104-297, Section 110(b) (emphasis added) (copy attached here to as Exhibit 3).

The current version of the U.S. Code Annotated published by West Publishing Company does not accurately reflect Section 305(c) as amended by Section 110(b) of the SFA. Specifically, the year 2000 edition of the U.S. Code Annotated's 16 U.S.C.A § 1855(c)(1) inaccurately restricts interim measures to those necessary to address "emergency overfishing".[2]

It is thus evident that, given the plain meaning of the amendments made by the SFA, the current U.S. Code Annotated does not accurately reflect the amendments made by Congress in the Sustainable Fisheries Act, Public Law 104-297, to Section 305(c) to the Magnuson-Stevens Act, 16 U.S.C. § 1855(c).  To reiterate, Section 305(c) of the Magnuson Steven Act ("MSA")

---

[2]     The U.S. Code Annotated's 16 U.S.C.A § 1855(c)(1) states:
(c) Emergency actions and interim measures

(1)     If the Secretary finds that an emergency exists or that interim measures are needed to reduce overfishing for any fishery, he may promulgate emergency regulations or interim measures necessary to address **the emergency overfishing**, without regard to whether a fishery management plan exists for such fishery.

16 U.S.C.A. § 1855(c)(1) (2000) (emphasis added) (copy attached as attachment 4).

provides NMFS with the authority to "promulgate emergency regulations or interim measures

necessary to address the **emergency or overfishing.**" 16 U.S.C. § 1855(c) (emphasis added).

B.    **MSA Section 305(c)(1), as Properly Constituted, Provides the Secretary with the Authority to Promulgate Interim Measures Necessary to Address Overfishing.**

The MSA establishes a detailed statutory process for adopting fishery management plans

("FMP"), FMP amendments, and measures which implement FMPs.  See Def. Opposition dated

May 1, 2000 at 1-2; 16 U.S.C. §§ 1853 - 1855.   The MSA's Section 305(c)(1) allows the

Secretary under certain limited circumstance to bypass the more comprehensive process.  As

shown below, NMFS' authority under Section 305(c)(1) is not limited to addressing emergencies

or "emergency overfishing" but rather expressly authorizes NMFS to exercise this authority to

implement measures necessary to address "overfishing" standing alone.[3]  Thus, on its face the

provision provides that if the Secretary finds that overfishing exists, the Secretary may

promulgate interim measures necessary to address overfishing without regard to whether an

emergency exists.  See United States v. Turkette, 452 U.S. 576, 593 (1981) (the most reliable

evidence of Congress' intent is the language of the statute).

This conclusion is confirmed by both the legislative history and governing statutory

construction canons.  As explained above, prior to the 1996 SFA amendments, MSA section

305(c)(1) only addressed "emergency" actions.  Clearly, in amending the statute in 1996 to add

---

[3]  We submit that the plain language, legislative context, and structure of the MSA's Section 305(c) demonstrate that Congress unambiguously authorized NMFS to promulgate interim measures to address overfishing alone, and thus NMFS' interpretation can be upheld under Chevron step I.  However, to the extent ambiguity exists, NMFS' interpretation is clearly a permissible construction of the Act and thus is entitled to deference an must be upheld under Step II of Chevron.

the phrase "or overfishing" to the provision, Congress intended to authorize the use of Section 305(c)(1) in circumstances other than and distinct from "emergencies." Any contrary reading of the statute that limits NMFS' Section 305(c)(1) authority to only those situations presenting an emergency would read the phrase "or overfishing" out of the statute contrary to Congress' clear intent in amending the statute. See Bailey v. United States, 516 U.S. 137, 146 (1995) ("We assume that Congress used two terms because it intended each term to have a particular, nonsuperfluous meaning.").

Finally, NMFS' interpretation is also confirmed by the structure of Section 305(c). As described above, the MSA's Section 305(c)(2) was also amended by SFA Section 110(b) in 1996 and provided NMFS with similar authority as that provided in Section 305(c)(1), except that under Section 305(c)(2) NMFS' actions are in response to Council requests. Under these circumstances, the only reasonable reading of the SFA amendments is that Congress intended Sections 305(c)(1) and 305(c)(2) to be construed in parallel fashions with respect to NMFS' response to overfishing. Ratzlaf v. United States, 510 U.S. 135, 143 (1994) (equivalent words are presumed to have equivalent meaning when repeated in the same statute); National Credit Union Admin. v. First Nat. Bank & Trust Co., 522 U.S. 479, 501 (1998) ("established canon of construction that similar language contained within the same section of a statute must be accorded a consistent meaning").[4]

---

[4]      This is also consistent with guidance issued by NMFS contemporaneously with the passage of the SFA amendments. Shortly after Congress enacted the SFA, NMFS published its interpretation of the provision of the recently enacted SFA. See Guide to the Sustainable Fisheries Act, NOAA General Counsel (1997). This guidance explains that "interim measures work just like emergency rules, except that there need be no showing of an emergency. . . . the
(continued...)

C.   **Pursuant to the MSA's Section 305(c), NMFS adopted the December 20, 1999 Interim Rule After Determining such Measures were Necessary to Address Overfishing.**

In 1999, the Secretary found that overfishing is occurring in the red snapper fishery. AR 3260, 3345 (stock assessments); 3070 (results of stock assessment given to Council). In adopting the December 20, 1999 Interim Rule, the Secretary reasonably determined that the interim measures provided therein were necessary to reduce overfishing. 64 Fed. Reg. 71056, AR at 8870. The decision to issue regulations aimed at improving one aspect of overfishing should be upheld as reasonable. See State of Louisiana v.Verity, 853 F.2d 322, 334 (5th Cir. 1988) (upholding limits on shrimp trawling as entirely reasonable); 16 U.S.C. § 1854(e)(6)(interim measure "may be implemented even though they are not sufficient by themselves to stop overfishing of a fishery").

Incompatible federal/state seasons have been a significant cause of overfishing in the red snapper fishery. Vol. 12 at AR 5423, 5424 (Environmental Assessment), 5488 (Decision Memorandum). If the state seasons remained open after the federal season closes, the conservation benefit of the federal restrictions would be compromised.[5] In addition, enforcement

---

[4]/(...continued)
only trigger is the existence of overfishing; the rule must respond directly to the overfishing problem." See Christensen v. Harris County, 120 S. Ct. 1655, 1663 (2000) (informal agency guidance documents are entitled to some deference and respect and should, at a bare minimum, be reviewed to determine if they have the power to persuade); Alabama Power, 636 F.2d at 353 ("[I]n general a court defers to the interpretation of a new statute by the agency that is charged with putting it into effect, meshing the wheels, and that presumably has some awareness of the approaches of legislators particularly concerned with the legislation.").

[5]    NMFS estimated that management under the Sept. 1 Rule could result in continued state harvests during the Federal closures of over 600,000 pounds. AR, Vol. 12, at 5429 (EA).

efforts become more difficult and noncompliance increases. AR, Vol. 12, at 5424 (EA).

In issuing the September 1 Rule, NMFS anticipated that the state seasons would largely coincide with the federal seasons, thereby largely avoiding the adverse consequences attributable to incompatible seasons. However, it became evident shortly before issuance of the September 1 Rule, that in fact the state did not intend to conform its seasons with the federal season.

NMFS addressed  incompatible federal/state seasons and other management issues by initiating the stakeholder process. AR, Vol. 12, 5230 - 5235. This process provided the public with an opportunity to recommend a combination of bag limits, size limits, and closed seasons that, based upon the best available science, would result in a catch that approximates the quota, and facilitates the coordination of federal and state seasons. AR, Vol., 11, at 4858 (Hogarth Letter to Council). These recommendations were reviewed by the Council's advisory panel and the Council's scientific and statistical committee and were also considered by the Council at its November 1999 meeting. These recommendations formed the basis for the December 1999 Interim Measure, as well as the annual harvest specification. See 65 Fed. Reg. 36656 (June 9, 2000).

When NMFS adopted the Interim Rule, NMFS expected the Gulf States, Florida, Alabama, Louisiana and Mississippi, to establish an April 15-October 31 recreational season, thereby eliminating most of the inconsistency between the federal and state seasons. AR, Vol.12, at 5332 (Section 7 consultation). Had NMFS not adopted the December 20, 1999 Interim Rule, the September 1 Rule, with its specific combination of measures and seasons, faced almost assured state fishing during the federal closure and noncompliance by anglers. AR, Vol.9, at 4312 (E-Mail); AR, Vol. 12, at 5424 (EA). The impact of the state fishing and illegal harvest

-10-

would have resulted in continued, increased overfishing. Id., at 5428.

Through the Interim Rule, however, NMFS determined that compatible state/federal seasons, combined with the recommended changes to the bag and size limits, would help reduce the harvest rate overall. The Interim Rule also reduced the number of commercial fishing days per month, which was expected to also reduce the harvest rate and the probability of exceeding the commercial quota. AR, Vol. 9, at 4212 (E-Mail); AR, Vol. 12, at 5424 (EA). Therefore, the December 20, 2000 interim rule rationally addressed the problem of overfishing.

Given that the Secretary determined that this regulation was necessary to reduce overfishing, the MSA's Section 305(c) authorizes the Secretary to bypass the MSA's more comprehensive FMP regulation adoption provisions.

**D.** **In Compliance with the APA, The Secretary for Good Cause bypassed Notice and Comment Procedures and the Delayed Effectiveness Period after Determining that Such Procedure were Contrary to the Public Interest.**

While the MSA's Section 305(c) exempts interim measures addressing overfishing from the MSA FMP process, the MSA's Section 305(c) does not necessarily exempt those interim measures from complying with the rulemaking provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. § 553. Accordingly, in issuing the Interim Rule here, NMFS also complied with the APA's regulation adoption provisions under the APA's Section 553. Specifically, NMFS properly found that good cause existed within the meaning of the APA to forgo advance notice and comment and the delayed effectiveness of the Interim Rule.

The APA's Section 553 establishes rulemaking procedures which includes certain notice and comment provisions. 5 U.S.C. § 553(b)(3)(B). The APA recognizes, however, that these APA notice and comment provisions may be waived when the agency for good cause finds that

-11-

these procedures are "impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. § 553(b)(3)(B); See Parravano v. Babbitt, 837 F.Supp 1034, 1048 (N.D. Cal) (regulation addressing overfishing constitutes "good cause" to dispense with normal notice and comment procedures); Trawler Diane Marie v. Brown, 918 F.Supp. 921, 927 (E.D. N.C. 1995); see also Methodist Hospital v. Sacramento, 38 F.3d 1225, 1236-1237 (D.C. Cir. 1994) (agency justified in its invocation of the good cause exemption in which it faced tight deadline to issue rules to implement a complicated statute). The APA also provides that for good cause the delayed effectiveness period may be waived. 5 U.S.C. § 553(d)(3).

The MSA implementing regulations explain some circumstances under which good cause exists. The regulations provides that "a Council recommendation for interim measures without notice-and-comment rulemaking will be considered favorably if the short-term benefits of the measures in reducing overfishing outweigh the value of advance notice, public comment, and deliberative consideration of the impacts on participants in the fishery." 50 C.F.R. § 600.310(5)(ii). 50 C.F.R. § 600.310(5)(ii) recognizes, however, that "[i]f interim measures are made effective without prior notice and opportunity to comment, they should be reserved for exceptional situations, because they affect fishermen without providing the usual procedural safeguards." 50 C.F.R. § 600.310(5)(ii).

The Administrative Record supports the Secretary's determination that advance notice and public procedure was contrary to public interest because the Interim Rule's short-term benefits of the measures in reducing overfishing outweighed the value of advance notice and public procedure. When NMFS realized that the Gulf States were not going to adopt compatible state seasons, NMFS recognized that the September 1 Rule would not adequately address

-12-

overfishing. The Gulf States were unlikely to comply with the estimated July 30 federal closure, which would allow continued fishing in state waters, increasing the likelihood of significant overfishing of the red snapper stock. AR, Vol. 9, at 4312 (E-Mail); AR, Vol. 12, at 5424 (Dec. Mem.). Additionally, the red snapper recreational and commercial fishermen across the Gulf had expressed their dissatisfaction with the September 1 Rule, increasing the probability of noncompliance. Based upon these recognitions, NMFS initiated a stakeholder process which resulted in addressing these issues by creating a rational set of industry-crafted and supported measures. AR, Vol. 12 at 5230-5235 (stakeholders meeting). By doing so, the NMFS expects that there will be compatibility between federal and State regulations in the snapper fishery. AR Vol. 12 at 5541 (NMFS approval letter to Council), 5543-5547 (NMFS letters to State Directors requesting compatible regulation).

The benefit of immediate implementation of the interim measures, elimination of incompatible state/federal seasons which was a significant cause of overfishing, outweighed the harm of foregoing comment,[9] which had already substantially occurred in the stakeholder and Council processes. Thus, in compliance with the requirements of the APA, NMFS had good cause to find that public notice and comment was contrary to the public interest.

Likewise, if the new measures were not effective on January 1, 2000, the fishery would have opened pursuant to the September 1 regulations. Any landings made between January 1 and the effective date of a future regulatory amendment would have to be compensated for by shortening the proposed April 21-October 31 season. Id., at 5502 (Dec. Mem.). As such,

---

[9]     Although the measures were implemented without formal notice and comment, the Interim Rule requested public comment on the measures. AR, Vol. 18, 8876 (Interim Rule).

-13-

consistent with the APA, NMFS had good cause to bypass the delayed effectiveness provision of the APA.

## CONCLUSION

For the reasons set forth above and in Defendants' opening brief, this Court should deny Plaintiffs' motion and grant Defendants' motion for summary judgment.

Respectfully submitted this August 8, 2000,

MERVYN M. MOSBACKER
United States Attorney
Southern District of Texas

LARRY LUDKA
Assistant United States Attorney

LOIS J. SCHIFFER
Assistant Attorney General
JEAN WILLIAMS, Chief
SETH M. BARSKY, Assistant Chief

ALLISON AREIAS, DC Bar # 453909

MATTHEW A. LOVE
United States Department of Justice
Environment and Natural Resources Division
Wildlife and Marine Resources Section
P.O. Box 7369
Washington, D.C. 20044-7369
Tel: (202) 305-0229
Fax: (202) 305-0275

ANTHONY P. HOANG
GEOFFREY GARVER
CAROLINE BLANCO
United States Department of Justice
Environment and Natural Resources Division

-14-

General Litigation Section
Washington, D.C.  20044-0663

Attorneys for Defendants


OF COUNSEL:
MICHAEL McLEMORE
E.V.E. JOY
CONSTANCE SATHRE
NOAA Office of the General Counsel

Case 2:00-cv-00028   Document 69   Filed in TXSD on 08/10/2000   Page 18 of 35

# UNITED STATES CODE

## 1994 EDITION

## SUPPLEMENT II

CONTAINING THE GENERAL AND PERMANENT LAWS OF
THE UNITED STATES, ENACTED DURING THE
104TH CONGRESS

Prepared and published under authority of Title 2, U.S. Code, Section 285b,
by the Office of the Law Revision Counsel of the House of Representatives



JANUARY 4, 1995, TO JANUARY 6, 1997

### VOLUME TWO

#### TITLE 12—BANKS AND BANKING

TO

#### TITLE 26—INTERNAL REVENUE CODE

UNITED STATES
GOVERNMENT PRINTING OFFICE
WASHINGTON : 1997

EXHIBIT

1

Case 2:00-cv-00028 Document 69 Filed in TXSD on 08/10/2000 Page 19 of 35

such Act (16 U.S.C. 1854) for pelagic longline fishing vessels that participate in fisheries for Atlantic highly migratory species. Such a system may not implement an individual fishing quota program until after October 1, 2000.''

INAPPLICABILITY OF SUBSECTION (h) TO AMERICAN LOBSTER FISHERY MANAGEMENT PLAN

Section 109(j) of Pub. L. 104–297, as amended by Pub. L. 104–208, div. A, title I, §101(a) [title II, §211(b)], Sept. 30, 1996, 110 Stat. 3009, 3009–41, provided that: "Section 304(h) of the Magnuson-Stevens Fishery Conservation and Management Act [16 U.S.C. 1854(h)], as amended by this Act, shall not apply to the American Lobster Fishery Management Plan.''

INTERIM MANAGEMENT OF HIGHLY MIGRATORY SPECIES FISHERIES

Section 106(k) of Pub. L. 101–627, as amended by Pub. L. 104–208, div. A, title I, §101(a) [title II, §211(b)], Sept. 30, 1996, 110 Stat. 3009, 3009–41, provided that: "Notwithstanding the amendments made by subsections (a) and (g) [amending section 1852 of this title], any fishery management plan or amendment which—

"(i) addresses a highly migratory species fishery to which section 304(f)(3) of the Magnuson-Stevens Fishery Conservation and Management Act [former 16 U.S.C. 1854(f)(3)] (as amended by this Act) applies,

[See main edition for text of (2) and (3)]

shall remain in force and effect until superseded by a fishery management plan prepared by the Secretary, and regulations implementing that plan.''

SECTION REFERRED TO IN OTHER SECTIONS

This section is referred to in sections 1821, 1852, 1853, 1855, 1861a, 1862 of this title.

## § 1855. Other requirements and authority

### (a) Gear evaluation and notification of entry

(1) Not later than 18 months after October 11, 1996, the Secretary shall publish in the Federal Register, after notice and an opportunity for public comment, a list of all fisheries—

(A) under the authority of each Council and all fishing gear used in such fisheries, based on information submitted by the Councils under section 1853(a) of this title; and

(B) to which section 1852(a)(3) of this title applies and all fishing gear used in such fisheries.

(2) The Secretary shall include with such list guidelines for determining when fishing gear or a fishery is sufficiently different from those listed as to require notification under paragraph (3).

(3) Effective 180 days after the publication of such list, no person or vessel may employ fishing gear or engage in a fishery not included on such list without giving 90 days advance written notice to the appropriate Council, or the Secretary with respect to a fishery to which section 1852(a)(3) of this title applies. A signed return receipt shall serve as adequate evidence of such notice and as the date upon which the 90-day period begins.

(4) A Council may submit to the Secretary any proposed changes to such list or such guidelines the Council deems appropriate. The Secretary shall publish a revised list, after notice and an opportunity for public comment, upon receiving any such proposed changes from a Council.

(5) A Council may request the Secretary to promulgate emergency regulations under sub-

section (c) of this section to prohibit any persons or vessels from using an unlisted fishing gear or engaging in an unlisted fishery if the appropriate Council, or the Secretary for fisheries to which section 1852(a)(3) of this title applies, determines that such unlisted gear or unlisted fishery would compromise the effectiveness of conservation and management efforts under this chapter.

(6) Nothing in this subsection shall be construed to permit a person or vessel to engage in fishing or employ fishing gear when such fishing or gear is prohibited or restricted by regulation under a fishery management plan or plan amendment, or under other applicable law.

### (b) Fish habitat

(1)(A) The Secretary shall, within 6 months of October 11, 1996, establish by regulation guidelines to assist the Councils in the description and identification of essential fish habitat in fishery management plans (including adverse impacts on such habitat) and in the consideration of actions to ensure the conservation and enhancement of such habitat. The Secretary shall set forth a schedule for the amendment of fishery management plans to include the identification of essential fish habitat and for the review and updating of such identifications based on new scientific evidence or other relevant information.

(B) The Secretary, in consultation with participants in the fishery, shall provide each Council with recommendations and information regarding each fishery under that Council's authority to assist it in the identification of essential fish habitat, the adverse impacts on that habitat, and the actions that should be considered to ensure the conservation and enhancement of that habitat.

(C) The Secretary shall review programs administered by the Department of Commerce and ensure that any relevant programs further the conservation and enhancement of essential fish habitat.

(D) The Secretary shall coordinate with and provide information to other Federal agencies to further the conservation and enhancement of essential fish habitat.

(2) Each Federal agency shall consult with the Secretary with respect to any action authorized, funded, or undertaken, or proposed to be authorized, funded, or undertaken, by such agency that may adversely affect any essential fish habitat identified under this chapter.

(3) Each Council—

(A) may comment on and make recommendations to the Secretary and any Federal or State agency concerning any activity authorized, funded, or undertaken, or proposed to be authorized, funded, or undertaken, by any Federal or State agency that, in the view of the Council, may affect the habitat, including essential fish habitat, of a fishery resource under its authority; and

(B) shall comment on and make recommendations to the Secretary and any Federal or State agency concerning any such activity that, in the view of the Council, is likely to substantially affect the habitat, including essential fish habitat, of an anadromous fishery resource under its authority.

Case 2:00-cv-00028 Document 69 Filed in TXSD on 08/10/2000 Page 20 of 35

(4)(A) If the Secretary receives information from a Council or Federal or State agency or determines from other sources that an action authorized, funded, or undertaken, or proposed to be authorized, funded, or undertaken, by any State or Federal agency would adversely affect any essential fish habitat identified under this chapter, the Secretary shall recommend to such agency measures that can be taken by such agency to conserve such habitat,

(B) Within 30 days after receiving a recommendation under subparagraph (A), a Federal agency shall provide a detailed response in writing to any Council commenting under paragraph (3) and the Secretary regarding the matter. The response shall include a description of measures proposed by the agency for avoiding, mitigating, or offsetting the impact of the activity on such habitat. In the case of a response that is inconsistent with the recommendations of the Secretary, the Federal agency shall explain its reasons for not following the recommendations.

**(c) Emergency actions and interim measures**

(1) If the Secretary finds that an emergency exists or that interim measures are needed to reduce overfishing for any fishery, he may promulgate emergency regulations or interim measures necessary to address the emergency or overfishing, without regard to whether a fishery management plan exists for such fishery.

(2) If a Council finds that an emergency exists or that interim measures are needed to reduce overfishing for any fishery within its jurisdiction, whether or not a fishery management plan exists for such fishery—

(A) the Secretary shall promulgate emergency regulations or interim measures under paragraph (1) to address the emergency or overfishing if the Council, by unanimous vote of the members who are voting members, requests the taking of such action; and

(B) the Secretary may promulgate emergency regulations or interim measures under paragraph (1) to address the emergency or overfishing if the Council, by less than a unanimous vote, requests the taking of such action.

(3) Any emergency regulation or interim measure which changes any existing fishery management plan or amendment shall be treated as an amendment to such plan for the period in which such regulation is in effect. Any emergency regulation or interim measure promulgated under this subsection—

(A) shall be published in the Federal Register together with the reasons therefor;

(B) shall, except as provided in subparagraph (C), remain in effect for not more than 180 days after the date of publication, and may be extended by publication in the Federal Register for one additional period of not more than 180 days, provided the public has had an opportunity to comment on the emergency regulation or interim measure. and, in the case of a Council recommendation for emergency regulations or interim measures, the Council is actively preparing a fishery management plan, plan amendment, or proposed regulations to address the emergency or overfishing on a permanent basis;

(C) that responds to a public health emergency or an oil spill may remain in effect until the circumstances that created the emergency no longer exist, *Provided,* That the public has an opportunity to comment after the regulation is published, and, in the case of a public health emergency, the Secretary of Health and Human Services concurs with the Secretary's action; and

(D) may be terminated by the Secretary at an earlier date by publication in the Federal Register of a notice of termination, except for emergency regulations promulgated under paragraph (2) in which case such early termination may be made only upon the agreement of the Secretary and the Council concerned.

*[See main edition for text of (d)]*

**(e) Effect of certain laws on certain time requirements**

The Paperwork Reduction Act of 1980 (44 U.S.C. 3501 et seq.),[1] the Regulatory Flexibility Act (5 U.S.C. 601 et seq.), and Executive Order Numbered 12866, dated September 30, 1993, shall be complied with within the time limitations specified in subsections (a), (b), and (c) of section 1854 of this title as they apply to the functions of the Secretary under such provisions.

**(f) Judicial review**

(1) Regulations promulgated by the Secretary under this chapter and actions described in paragraph (2) shall be subject to judicial review to the extent authorized by, and in accordance with, chapter 7 of title 5, if a petition for such review is filed within 30 days after the date on which the regulations are promulgated or the action is published in the Federal Register, as applicable; except that—

(A) section 705 of such title is not applicable, and

(B) the appropriate court shall only set aside any such regulation or action on a ground specified in section 706(2)(A), (B), (C), or (D) of such title.

(2) The actions referred to in paragraph (1) are actions that are taken by the Secretary under regulations which implement a fishery management plan, including but not limited to actions that establish the date of closure of a fishery to commercial or recreational fishing.

(3)(A) Notwithstanding any other provision of law, the Secretary shall file a response to any petition filed in accordance with paragraph (1), not later than 45 days after the date the Secretary is served with that petition, except that the appropriate court may extend the period for filing such a response upon a showing by the Secretary of good cause for that extension.

(B) A response of the Secretary under this paragraph shall include a copy of the administrative record for the regulations that are the subject of the petition.

(4) Upon a motion by the person who files a petition under this subsection, the appropriate court shall assign the matter for hearing at the earliest possible date and shall expedite the matter in every possible way.

---

[1] See References in Text note below.

*1995 VERSION*

### UNITED STATES CODE ANNOTATED
### TITLE 16. CONSERVATION
### CHAPTER 38--FISHERY CONSERVATION AND MANAGEMENT
### SUBCHAPTER IV--NATIONAL FISHERY MANAGEMENT PROGRAM

Copr. © West 1995. All rights reserved.

§ 1855. Implementation of fishery management plans

(a) Implementation

The Secretary shall promulgate each regulation that is necessary to carry out a plan or amendment--

(1) within 110 days after the plan or amendment was received by him for action under section 1854(a) of this title, if such plan or amendment takes effect under section 1854(b)(1) of this title;

(2) within 75 days after a revised plan or amendment was received by him under section 1854(b) of this title, if such plan or amendment takes effect under paragraph (3)(D) of such section;  or

(3) within such time as he deems appropriate in the case of a plan or amendment prepared by him under section 1854(c) or (f)(3) of this title.

(b) Judicial review

(1) Regulations promulgated by the Secretary under this chapter and actions described in paragraph (2) shall be subject to judicial review to the extent authorized by, and in accordance with, chapter 7 of Title 5, if a petition for such review is filed within 30 days after the date on which the regulations are promulgated or the action is published in the Federal Register, as applicable; except that--

(A) section 705 of such Title is not applicable, and

(B) the appropriate court shall only set aside any such regulation or action on a ground specified in section 706(2)(A), (B), (C), or (D) of such Title.

(2) The actions referred to in paragraph (1) are actions that are taken by the Secretary under regulations which implement a fishery management plan, including but not limited to actions that establish the date of closure of a fishery to commercial or recreational fishing.

(3)(A) Notwithstanding any other provision of law, the Secretary shall file a response to any petition filed in accordance with paragraph (1), not later than 45 days after the date the Secretary is served with that petition, except that the appropriate court may extend the period for filing such a response upon a showing by the Secretary of good cause for that extension.

(B) A response of the Secretary under this paragraph shall include a copy of the administrative record for the regulations that are the subject of the petition.

(4) Upon a motion by the person who files a petition under this subsection, the appropriate court shall assign the matter for hearing at the earliest possible date and shall expedite the matter in every possible way.

(c) Emergency actions

(1) If the Secretary finds that an emergency exists involving any fishery, he may promulgate emergency

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

EXHIBIT

2

Case 2:00-cv-00028   Document 69   Filed in TXSD on 08/10/2000   Page 22 of 35

regulations necessary to address the emergency, without regard to whether a fishery management plan exists for such fishery.

(2) If a Council finds that an emergency exists involving any fishery within its jurisdiction, whether or not a fishery management plan exists for such fishery--

(A) the Secretary shall promulgate emergency regulations under paragraph (1) to address the emergency if the Council, by unanimous vote of the members who are voting members, requests the taking of such action; and

(B) the Secretary may promulgate emergency regulations under paragraph (1) to address the emergency if the Council, by less than a unanimous vote, requests the taking of such action.

(3) Any emergency regulation which changes any existing fishery management plan or amendment shall be treated as an amendment to such plan for the period in which such regulation is in effect. Any emergency regulation promulgated under this subsection--

(A) shall be published in the Federal Register together with the reasons therefor;

(B) shall remain in effect for not more than 90 days after the date of such publication, except that any such regulation may, by agreement of the Secretary and the Council, be promulgated for one additional period of not more than 90 days; and

(C) may be terminated by the Secretary at an earlier date by publication in the Federal Register of a notice of termination, except for emergency regulations promulgated under paragraph (2) in which case such early termination may be made only upon the agreement of the Secretary and the Council concerned.

(d) Responsibility of Secretary

The Secretary shall have general responsibility to carry out any fishery management plan or amendment approved or prepared by him, in accordance with the provisions of this chapter. The Secretary may promulgate such regulations, in accordance with section 553 of Title 5, as may be necessary to discharge such responsibility or to carry out any other provision of this chapter.

(e) Effect of certain laws on certain time requirements

The Paperwork Reduction Act of 1980 (44 U.S.C. 3501 et seq.), the Regulatory Flexibility Act (5 U.S.C. 601 et seq.), and Executive Order Numbered 12291, dated February 17, 1981, shall be complied with within the time limitations specified in subsection (c) of this section or section 1854(a) and (b) of this title as they apply to the functions of the Secretary under such provisions.

(f) **Repealed.** Pub.L. 97-453, § 8(4), Jan. 12, 1983, 96 Stat. 2490

[(g), (h) redesignated (d) and (e)]

## CREDIT(S)

### 1995 Pocket Part

(Pub.L. 94-265, Title III, § 305, Apr. 13, 1976, 90 Stat. 354; Pub.L. 96- 561, Title II, § 235, Dec. 22, 1980, 94 Stat. 3299; Pub.L. 97-453, § 8, Jan. 12, 1983, 96 Stat. 2490; Pub.L. 101-627, Title I, §§ 110(b)(2), 111(a)(1), 111(b), Nov. 28, 1990, 104 Stat. 4451, 4452.)

## HISTORICAL AND STATUTORY NOTES

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

Case 2:00-cv-00028   Document 69   Filed in TXSD on 08/10/2000   Page 23 of 35

References in Text

This chapter, referred to in text, read in the original "this Act", meaning Pub.L. 94-265, Apr. 13, 1976, 90 Stat. 331, as amended, known as the Magnuson Fishery Conservation and Management Act, which is classified principally to this chapter. For complete classification of this Act to the Code, see Short Title note set out under section 1801 of this title and Tables.

The Paperwork Reduction Act of 1980, (44 U.S.C. 3501 et seq.), referred to in subsec. (h), is Pub.L. 96-511, Dec. 11, 1980, 94 Stat. 2812, as amended, which is classified principally to chapter 35 (section 3501 et seq.) of Title 44, Public Printing and Documents. For complete classification of this Act to the Code, see Short Title of 1980 Amendment note set out under section 101 of Title 44 and Tables volume.

The Regulatory Flexibility Act, referred to in subsec. (h), is Pub.L. 96-354, Sept. 19, 1980, 94 Stat. 1164, which enacted chapter 6 ( § 601 et seq.) of Title 5, Government Organization and Employees. For complete classification of the Act to the Code, see Short Title note under section 601 of Title 5 and Tables volume.

Executive Order Numbered 12291, dated February 17, 1981, is set out as a note under section 601 of Title 5, Government Organization and Employees.

1990 Amendment

Subsec. (a). Pub.L. 101-627, §§ 110(b)(2), 111(a)(1)(A), redesignated former subsec. (c) as (a) and, in subsec. (a) as so designated, substituted "section 1854(c) or (f)(3) of this title" for "section 1854(c) of this title".

Subsec. (b). Pub.L. 101-627, § 111(a)(1)(A), (b), redesignated former subsec. (d) as (b) and, in subsec. (b) as so redesignated, designated existing provision as par. (a), inserting "or the action is published in the Federal Register, as applicable" after "promulgated", and redesignated former pars. (a) and (2) as subpars. (A) and (B), respectively, and added pars (2) to (4).

Subsecs. (c) to (e). Pub.L. 101-627, § 111(a)(1), redesignated former subsecs. (e), (g), and (h) as (c), (d), and (e). respectively.

1983 Amendment

Subsec. (a). Pub.L. 97-453, § 8(1), struck out subsec. (a), which had provided that, as soon as practicable after the Secretary approved pursuant to section 1854(a) and (b) of this title any fishery management plan or amendment or prepared pursuant to section 1854(c) of this title any fishery management plan or amendment, the Secretary was to publish a notice of availability of such plan or amendment and any regulations which he proposed to promulgate to implement such plan or amendment in the Federal Register, and that interested persons were to be afforded a period of not less than 45 days after such publication within which to submit in writing data, views, or comments on the plan or amendment, and on the proposed regulations.

Subsec. (b). Pub.L. 97-453, § 8(1), struck out subsec. (b), which had provided that the Secretary might schedule a hearing, in accordance with section 553 of Title 5, on any fishery management plan, any amendment to any such plan, any regulations to implement any such plan or amendment and that if any such hearing was scheduled, the Secretary might postpone the effective date of the regulations proposed to implement such plan or amendment, or take such other action as he deemed appropriate to preserve the rights or status of any person, pending its outcome.

Subsec. (c). Pub.L. 97-453, § 8(2), substituted provision that the Secretary shall promulgate each regulation that is necessary to carry out a plan or amendment within 110 days after the plan or amendment was received by him for action under section 1854(a) of this title if such plan or amendment takes effect under section 1854(b)(1) of this title, within 75 days after a revised plan or amendment was received by him under section 1854(b) of this title

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

if such plan or amendment takes effect under paragraph (3)(D) of such section, or within such time as he deems appropriate in the case of a plan or amendment prepared by him under section 1854(c) of this title, for provision that the Secretary promulgate regulations to implement any fishery management plan or any amendment to any such plan after consideration of all relevant matters presented to him during the 45-day period referred to in former subsection (a) of this section and produced in any hearing held under former subsection (b) of this section if he found the plan or amendment consistent with the national standards, the other provisions of this chapter, and any other applicable law, and that to the extent practicable, such regulation be put into effect in a manner not disruptive of the regular fishing season for any fishery.

Subsec. (e).  Pub.L. 97-453,  § 8(3), substituted provision that if the Secretary finds that an emergency exists involving any fishery, he may promulgate emergency regulations necessary to address the emergency, without regard to whether a fishery management plan exists for such fishery, that if a Council finds that an emergency exists involving any fishery within its jurisdiction, whether or not a fishery management plan exists for such fishery, the Secretary shall promulgate emergency regulations under paragraph (1) to address the emergency if the Council, by unanimous vote of the members who are voting members, requests the taking of such action, and the Secretary may promulgate emergency regulations under paragraph (1) to address the emergency if the Council, by less than a unanimous vote, requests the taking of such action, for provision that if the Secretary found that an emergency involving any fishery resources existed, he might promulgate emergency regulations, without regard to subsections former (a) and (c) of this section, to implement any fishery management plan, if required, or promulgate emergency regulations to amend any regulation implementing any existing fishery management plan, to the extent required by such emergency, and further substituted provision that any emergency regulation which changes any existing fishery management plan or amendment shall be treated as an amendment to such plan for the period in which such regulation is in effect, that any emergency regulation promulgated under this subsection shall be published in the Federal Register together with the reasons therefor, shall remain in effect for not more than 90 days after the date of such publication, except that any such regulation may, by agreement of the Secretary and the Council, be promulgated for one additional period of not more than 90 days, and may be terminated by the Secretary at an earlier date by publication in the Federal Register of a notice of termination, except for emergency regulations promulgated under paragraph (2) in which case such early termination may be made only upon the agreement of the Secretary and the Council concerned, for provision that any emergency regulation which changed any existing fishery management plan be treated as an amendment to such plan for the period in which such regulation was in effect, that any emergency regulation promulgated under this subsection be published in the Federal Register together with the reasons therefor, remain in effect for not more than 45 days after the date of such publication, except that any such regulation may be repromulgated for one additional period of not more than 45 days, and be terminated by the Secretary at any earlier date by publication in the Federal Register of a notice of termination.

Subsec. (f).  Pub.L. 97-453,  § 8(4), struck out subsec. (f), which had directed the Secretary to report to the Congress and the President, not later than March 1 of each year, on all activities of the Councils and the Secretary with respect to fishery management plans, regulations to implement such plans, and all other activities relating to the conservation and management of fishery resources undertaken under this chapter during the preceding calendar year.

Subsec. (h).  Pub.L. 97-453, § 8(5), added subsec. (h).

1980 Amendment

Subsec. (a).  Pub.L. 96-561 inserted "a notice of availability of" following  "Federal Register (A)".

Legislative History

For legislative history and purpose of Pub.L. 94-265, see 1976 U.S. Code Cong. and Adm. News, p. 593.  See, also, Pub.L. 96-561, 1980 U.S. Code Cong. and Adm. News, p. 6793;  Pub.L. 97-453, 1982 U.S. Code Cong. and Adm. News, p. 4320.

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

(A) establish an advisory panel under section 302(g)(4) of the Magnuson Fishery Conservation and Management Act, as amended by this Act, for pelagic longline fishing vessels that participate in fisheries for Atlantic highly migratory species;

(B) conduct surveys and workshops with affected fishery participants to provide information and identify options for future management programs;

(C) to the extent practicable and necessary for the evaluation of options for a comprehensive management system, recover vessel production records; and

(D) complete by January 1, 1998, a comprehensive study on the feasibility of implementing a comprehensive management system for pelagic longline fishing vessels that participate in fisheries for Atlantic highly migratory species, including, but not limited to, individual fishing quota programs and other limited access systems.

(2) Based on the study under paragraph (1)(D) and consistent with the requirements of the Magnuson Fishery Conservation and Management Act (16 U.S.C. 1801 et seq.), in cooperation with affected participants in the fishery, the United States Commissioners on the International Commission for the Conservation of Atlantic Tunas, and the advisory panel established under paragraph (1)(A), the Secretary of Commerce may, after October 1, 1998, implement a comprehensive management system pursuant to section 304 of such Act (16 U.S.C. 1854) for pelagic longline fishing vessels that participate in fisheries for Atlantic highly migratory species. Such a system may not implement an individual fishing quota program until after October 1, 2000.

(i) REPEAL OR REVOCATION OF A FISHERY MANAGEMENT PLAN.—Section 304, as amended, is further amended by adding at the end the following:

"(h) REPEAL OR REVOCATION OF A FISHERY MANAGEMENT PLAN.—The Secretary may repeal or revoke a fishery management plan for a fishery under the authority of a Council only if the Council approves the repeal or revocation by a three-quarters majority of the voting members of the Council.".

(j) AMERICAN LOBSTER FISHERY.—Section 304(h) of the Magnuson Fishery Conservation and Management Act, as amended by this Act, shall not apply to the American Lobster Fishery Management Plan.

16 USC 1854 note.

### SEC. 110. OTHER REQUIREMENTS AND AUTHORITY.

(a) Section 305 (18 U.S.C. 1855) is amended—

(1) by striking the title and subsection (a);

(2) by redesignating subsection (b) as subsection (f); and

(3) by inserting the following before subsection (c):

### "SEC. 305. OTHER REQUIREMENTS AND AUTHORITY.

"(a) GEAR EVALUATION AND NOTIFICATION OF ENTRY.—

"(1) Not later than 18 months after the date of enactment of the Sustainable Fisheries Act, the Secretary shall publish in the Federal Register, after notice and an opportunity for public comment, a list of all fisheries—

Federal Register, publication.

"(A) under the authority of each Council and all fishing gear used in such fisheries, based on information submitted by the Councils under section 303(a); and

EXHIBIT

3

tabbies®

"(B) to which section 302(a)(3) applies and all fishing gear used in such fisheries.

Guidelines.

"(2) The Secretary shall include with such list guidelines for determining when fishing gear or a fishery is sufficiently different from those listed as to require notification under paragraph (3).

Effective date.

"(3) Effective 180 days after the publication of such list, no person or vessel may employ fishing gear or engage in a fishery not included on such list without giving 90 days advance written notice to the appropriate Council, or the Secretary with respect to a fishery to which section 302(a)(3) applies. A signed return receipt shall serve as adequate evidence of such notice and as the date upon which the 90-day period begins.

"(4) A Council may submit to the Secretary any proposed changes to such list or such guidelines the Council deems appropriate. The Secretary shall publish a revised list, after notice and an opportunity for public comment, upon receiving any such proposed changes from a Council.

Publication.

"(5) A Council may request the Secretary to promulgate emergency regulations under subsection (c) to prohibit any persons or vessels from using an unlisted fishing gear or engaging in an unlisted fishery if the appropriate Council, or the Secretary for fisheries to which section 302(a)(3) applies, determines that such unlisted gear or unlisted fishery would compromise the effectiveness of conservation and management efforts under this Act.

"(6) Nothing in this subsection shall be construed to permit a person or vessel to engage in fishing or employ fishing gear when such fishing or gear is prohibited or restricted by regulation under a fishery management plan or plan amendment, or under other applicable law.

Regulations.
Guidelines.

"(b) FISH HABITAT.—(1)(A) The Secretary shall, within 6 months of the date of enactment of the Sustainable Fisheries Act, establish by regulation guidelines to assist the Councils in the description and identification of essential fish habitat in fishery management plans (including adverse impacts on such habitat) and in the consideration of actions to ensure the conservation and enhancement of such habitat. The Secretary shall set forth a schedule for the amendment of fishery management plans to include the identification of essential fish habitat and for the review and updating of such identifications based on new scientific evidence or other relevant information.

"(B) The Secretary, in consultation with participants in the fishery, shall provide each Council with recommendations and information regarding each fishery under that Council's authority to assist it in the identification of essential fish habitat, the adverse impacts on that habitat, and the actions that should be considered to ensure the conservation and enhancement of that habitat.

"(C) The Secretary shall review programs administered by the Department of Commerce and ensure that any relevant programs further the conservation and enhancement of essential fish habitat.

"(D) The Secretary shall coordinate with and provide information to other Federal agencies to further the conservation and enhancement of essential fish habitat.

"(2) Each Federal agency shall consult with the Secretary with respect to any action authorized, funded, or undertaken, or proposed

to be authorized, funded, or undertaken, by such agency that may adversely affect any essential fish habitat identified under this Act.

"(3) Each Council—

"(A) may comment on and make recommendations to the Secretary and any Federal or State agency concerning any activity authorized, funded, or undertaken, or proposed to be authorized, funded, or undertaken, by any Federal or State agency that, in the view of the Council, may affect the habitat, including essential fish habitat, of a fishery resource under its authority; and

"(B) shall comment on and make recommendations to the Secretary and any Federal or State agency concerning any such activity that, in the view of the Council, is likely to substantially affect the habitat, including essential fish habitat, of an anadromous fishery resource under its authority.

"(4)(A) If the Secretary receives information from a Council or Federal or State agency or determines from other sources that an action authorized, funded, or undertaken, or proposed to be authorized, funded, or undertaken, by any State or Federal agency would adversely affect any essential fish habitat identified under this Act, the Secretary shall recommend to such agency measures that can be taken by such agency to conserve such habitat.

"(B) Within 30 days after receiving a recommendation under subparagraph (A), a Federal agency shall provide a detailed response in writing to any Council commenting under paragraph (3) and the Secretary regarding the matter. The response shall include a description of measures proposed by the agency for avoiding, mitigating, or offsetting the impact of the activity on such habitat. In the case of a response that is inconsistent with the recommendations of the Secretary, the Federal agency shall explain its reasons for not following the recommendations.".

(b) Section 305(c) (16 U.S.C. 1855(c)) is amended—

(1) in the heading by striking "ACTIONS" and inserting "ACTIONS AND INTERIM MEASURES";

(2) in paragraphs (1) and (2)—

(A) by striking "involving" and inserting "or that interim measures are needed to reduce overfishing for"; and

(B) by inserting "or interim measures" after "emergency regulations"; and

(C) by inserting "or overfishing" after "emergency"; and

(3) in paragraph (3)—

(A) by inserting "or interim measure" after "emergency regulation" each place such term appears;

(B) by striking subparagraph (B);

(C) by redesignating subparagraph (C) as subparagraph (D); and

(D) by inserting after subparagraph (A) the following:

"(B) shall, except as provided in subparagraph (C), remain in effect for not more than 180 days after the date of publication, and may be extended by publication in the Federal Register for one additional period of not more than 180 days, provided the public has had an opportunity to comment on the emergency regulation or interim measure, and, in the case of a Council recommendation

for emergency regulations or interim measures, the Council is actively preparing a fishery management plan, plan amendment, or proposed regulations to address the emergency or overfishing on a permanent basis;

"(C) that responds to a public health emergency or an oil spill may remain in effect until the circumstances that created the emergency no longer exist, *Provided*, That the public has an opportunity to comment after the regulation is published, and, in the case of a public health emergency, the Secretary of Health and Human Services concurs with the Secretary's action; and".

16 USC 1855.        (c) Section 305(e) is amended—

(1) by striking "12291, dated February 17, 1981," and inserting "12866, dated September 30, 1993,"; and

(2) by striking "subsection (c) or section 304(a) and (b)" and inserting "subsections (a), (b), and (c) of section 304".

(d) Section 305, as amended, is further amended by adding at the end the following:

"(g) NEGOTIATED CONSERVATION AND MANAGEMENT MEASURES.—

"(1)(A) In accordance with regulations promulgated by the Secretary pursuant to this paragraph, a Council may establish a fishery negotiation panel to assist in the development of specific conservation and management measures for a fishery under its authority. The Secretary may establish a fishery negotiation panel to assist in the development of specific conservation and management measures required for a fishery under section 304(e)(5), for a fishery for which the Secretary has authority under section 304(g), or for any other fishery with the approval of the appropriate Council.

Regulations.        "(B) No later than 180 days after the date of enactment of the Sustainable Fisheries Act, the Secretary shall promulgate regulations establishing procedures, developed in cooperation with the Administrative Conference of the United States, for the establishment and operation of fishery negotiation panels. Such procedures shall be comparable to the procedures for negotiated rulemaking established by subchapter III of chapter 5 of title 5, United States Code.

Reports.        "(2) If a negotiation panel submits a report, such report shall specify all the areas where consensus was reached by the panel, including, if appropriate, proposed conservation and management measures, as well as any other information

Federal Register, publication.        submitted by members of the negotiation panel. Upon receipt, the Secretary shall publish such report in the Federal Register for public comment.

"(3) Nothing in this subsection shall be construed to require either a Council or the Secretary, whichever is appropriate, to use all or any portion of a report from a negotiation panel established under this subsection in the development of specific conservation and management measures for the fishery for which the panel was established.

"(h) CENTRAL REGISTRY SYSTEM FOR LIMITED ACCESS SYSTEM PERMITS.—

Establishment.        "(1) Within 6 months after the date of enactment of the Sustainable Fisheries Act, the Secretary shall establish an exclusive central registry system (which may be administered on a regional basis) for limited access system permits estab-

lished under section 303(b)(6) or other Federal law, including individual fishing quotas, which shall provide for the registration of title to, and interests in, such permits, as well as for procedures for changes in the registration of title to such permits upon the occurrence of involuntary transfers, judicial or nonjudicial foreclosure of interests, enforcement of judgments thereon, and related matters deemed appropriate by the Secretary. Such registry system shall—

"(A) provide a mechanism for filing notice of a nonjudicial foreclosure or enforcement of a judgment by which the holder of a senior security interest acquires or conveys ownership of a permit, and in the event of a nonjudicial foreclosure, by which the interests of the holders of junior security interests are released when the permit is transferred;

"(B) provide for public access to the information filed under such system, notwithstanding section 402(b); and

"(C) provide such notice and other requirements of applicable law that the Secretary deems necessary for an effective registry system.

"(2) The Secretary shall promulgate such regulations as may be necessary to carry out this subsection, after consulting with the Councils and providing an opportunity for public comment. The Secretary is authorized to contract with non-Federal entities to administer the central registry system.

"(3) To be effective and perfected against any person except the transferor, its heirs and devisees, and persons having actual notice thereof, all security interests, and all sales and other transfers of permits described in paragraph (1), shall be registered in compliance with the regulations promulgated under paragraph (2). Such registration shall constitute the exclusive means of perfection of title to, and security interests in, such permits, except for Federal tax liens thereon, which shall be perfected exclusively in accordance with the Internal Revenue Code of 1986 (26 U.S.C. 1 et seq.). The Secretary shall notify both the buyer and seller of a permit if a lien has been filed by the Secretary of the Treasury against the permit before collecting any transfer fee under paragraph (5) of this subsection.

"(4) The priority of security interests shall be determined in order of filing, the first filed having the highest priority. A validly-filed security interest shall remain valid and perfected notwithstanding a change in residence or place of business of the owner of record. For the purposes of this subsection, 'security interest' shall include security interests, assignments, liens and other encumbrances of whatever kind.

"(5)(A) Notwithstanding section 304(d)(1), the Secretary shall collect a reasonable fee of not more than one-half of one percent of the value of a limited access system permit upon registration of the title to such permit with the central registry system and upon the transfer of such registered title. Any such fee collected shall be deposited in the Limited Access System Administration Fund established under subparagraph (B).

"(B) There is established in the Treasury a Limited Access System Administration Fund. The Fund shall be available,

Public information.

Regulations.

Notification.

Case 2:00-cv-00028   Document 69   Filed in TXSD on 08/10/2000   Page 30 of 35

without appropriation or fiscal year limitation, only to the Secretary for the purposes of—

"(i) administering the central registry system; and

"(ii) administering and implementing this Act in the fishery in which the fees were collected. Sums in the Fund that are not currently needed for these purposes shall be kept on deposit or invested in obligations of, or guaranteed by, the United States.".

16 USC 1855 note.

(e) REGISTRY TRANSITION.—Security interests on permits described under section 305(h)(1) of the Magnuson Fishery Conservation and Management Act, as amended by this Act, that are effective and perfected by otherwise applicable law on the date of the final regulations implementing section 305(h) shall remain effective and perfected if, within 120 days after such date, the secured party submits evidence satisfactory to the Secretary of Commerce and in compliance with such regulations of the perfection of such security.

### SEC. 111. PACIFIC COMMUNITY FISHERIES.

(a) HAROLD SPARCK MEMORIAL COMMUNITY DEVELOPMENT QUOTA PROGRAM.—Section 305, as amended, is amended further by adding at the end:

"(i) ALASKA AND WESTERN PACIFIC COMMUNITY DEVELOPMENT PROGRAMS.—

Establishment.

"(1)(A) The North Pacific Council and the Secretary shall establish a western Alaska community development quota program under which a percentage of the total allowable catch of any Bering Sea fishery is allocated to the program.

"(B) To be eligible to participate in the western Alaska community development quota program under subparagraph (A) a community shall—

"(i) be located within 50 nautical miles from the baseline from which the breadth of the territorial sea is measured along the Bering Sea coast from the Bering Strait to the western most of the Aleutian Islands, or on an island within the Bering Sea;

"(ii) not be located on the Gulf of Alaska coast of the north Pacific Ocean;

"(iii) meet criteria developed by the Governor of Alaska, approved by the Secretary, and published in the Federal Register;

"(iv) be certified by the Secretary of the Interior pursuant to the Alaska Native Claims Settlement Act (43 U.S.C. 1601 et seq.) to be a Native village;

"(v) consist of residents who conduct more than one-half of their current commercial or subsistence fishing effort in the waters of the Bering Sea or waters surrounding the Aleutian Islands; and

"(vi) not have previously developed harvesting or processing capability sufficient to support substantial participation in the groundfish fisheries in the Bering Sea, unless the community can show that the benefits from an approved Community Development Plan would be the only way for the community to realize a return from previous investments.

"(C)(i) Prior to October 1, 2001, the North Pacific Council may not submit to the Secretary any fishery management plan,

(C) The Secretary shall review programs administered by the Department of Commerce and ensure that any relevant programs further the conservation and enhancement of essential fish habitat.

(D) The Secretary shall coordinate with and provide information to other Federal agencies to further the conservation and enhancement of essential fish habitat.

(2) Each Federal agency shall consult with the Secretary with respect to any action authorized, funded, or undertaken, or proposed to be authorized, funded, or undertaken, by such agency that may adversely affect any essential fish habitat identified under this chapter.

(3) Each Council—

(A) may comment on and make recommendations to the Secretary and any Federal or State agency concerning any activity authorized, funded, or undertaken, or proposed to be authorized, funded, or undertaken, by any Federal or State agency that, in the view of the Council, may affect the habitat, including essential fish habitat, of a fishery resource under its authority; and

(B) shall comment on and make recommendations to the Secretary and any Federal or State agency concerning any such activity that, in the view of the Council, is likely to substantially affect the habitat, including essential fish habitat, of an anadromous fishery resource under its authority.

(4)(A) If the Secretary receives information from a Council or Federal or State agency or determines from other sources that an action authorized, funded, or undertaken, or proposed to be authorized, funded, or undertaken, by any State or Federal agency would adversely affect any essential fish habitat identified under this chapter, the Secretary shall recommend to such agency measures that can be taken by such agency to conserve such habitat.

(B) Within 30 days after receiving a recommendation under subparagraph (A), a Federal agency shall provide a detailed response in writing to any Council commenting under paragraph (3) and the Secretary regarding the matter. The response shall include a description of measures proposed by the agency for avoiding, mitigating, or offsetting the impact of the activity on such habitat. In the case of a response that is inconsistent with the recommendations of the Secretary, the Federal agency shall explain its reasons for not following the recommendations.

(c) Emergency actions and interim measures

(1) If the Secretary finds that an emergency or overfishing exists or that interim measures are needed to reduce overfishing for any fishery, he may promulgate emergency regulations or interim measures necessary to address the emergency overfishing, without regard to whether a fishery management plan exists for such fishery.

(2) If a Council finds that an emergency or overfishing exists or that interim measures are needed to reduce overfishing for any fishery within its jurisdiction, whether or not a fishery management plan exists for such fishery—

(A) the Secretary shall promulgate emergency regulations or interim measures under paragraph (1) to address the emergency if the Council, by unanimous vote of the members who are voting members, requests the taking of such action; and

(B) the Secretary may promulgate emergency regulations or interim measures under paragraph (1) to address the emergency if the Council, by less than a unanimous vote, requests the taking of such action.

(3) Any emergency regulation or interim measure which changes any existing fishery management plan or amendment shall be treated as an amendment to such plan for the period in which such regulation is in effect. Any emergency regulation or interim measure promulgated under this subsection—

(A) shall be published in the Federal Register together with the reasons therefor;

(B) shall, except as provided in subparagraph (C), remain in effect for not more than 180 days after the date of publication, and may be extended by publication in the Federal Register for one additional period of not more than 180 days, provided the public has had an opportunity to comment on the emergency regulation or interim measure; and, in the case of a Council recommendation for emergency regulations or interim measures, the Council is actively preparing a fishery manage-

462

---

CONSERVATION

...ment plan, plan amendme... ...overfishing on a permaner...

(C) that responds to a... effect until the circumstan... That the public has an o... and, in the case of a publ... Services concurs with the...

(D) may be terminated... Federal Register of a r... promulgated under para... made only upon the ag...

(d) Responsibility of Secreta

The Secretary shall have g... plan or amendment approved... this chapter. The Secretary... section 553 of Title 5, as may... out any other provision of this...

(e) Effect of certain laws or

The Paperwork Reduction... Flexibility Act (5 U.S.C. 601... September 30, 1993, shall b... subsections (a), (b), and (c) of... the Secretary under such pro...

(f) Judicial review

(1) Regulations promulgat... scribed in paragraph (2) shal... and in accordance with, chapt... days after the date on which... in the Federal Register, as a...

(A) section 705 of such...

(B) the appropriate c... ground specified in secti...

(2) The actions referred... Secretary under regulations... not limited to actions that e... recreational fishing.

(3)(A) Notwithstanding a... to any petition filed in acco... date the Secretary is serve... extend the period for filing... cause for that extension.

(B) A response of the S... administrative record for the...

(4) Upon a motion by t... appropriate court shall assi... shall expedite the matter in...

(g) Negotiated conservatio...

(1)(A) In accordance wit... paragraph, a Council may e... ment of specific conservat... authority. The Secretary... development of specific con... under section 1854(e)(5) of... under section 1854(g) of t... appropriate Council.

EXHIBIT

4

tabbies

nistered by the Department of Com-
rther the conservation and enhance-
...provide information to other Federal
ent of essential fish habitat.
Secretary with respect to any action
be authorized, funded, or undertaken,
ntial fish habitat identified under this

ndations to the Secretary and any
ty authorized, funded, or undertaken,
ndertaken, by any Federal or State
affect the habitat, including essential
hority; and

endations to the Secretary and any
ch activity that, in the view of the
ibitat, including essential fish habitat,
uthority.

'rom a Council or Federal or State
ction authorized, funded, or undertak-
aken, by any State or Federal agency
t identified under this chapter, the
rea that can be taken by such agency

endation under subparagraph (A), a
n writing to any Council commenting
ng the matter. The response shall
e agency for avoiding, mitigating, or
at. In the case of a response that is
Secretary, the Federal agency shall
dations.

or overfishing exists or that interim
ry fishery, he may promulgate emer-
o address the emergency overfishing,
lan exists for such fishery.

r overfishing exists or that interim
any fishery within its jurisdiction,
or such fishery—

ency regulations or interim measures
y if the Council, by unanimous vote of
nests the taking of such action; and

ency regulations or interim measures
ency if the Council, by less than a
ction.

ire which changes any existing fishery
as an amendment to such plan for the
ny emergency regulation or interim

ster together with the reasons there-

iph (C), remain in effect for not more
nd may be extended by publication in
l of not more than 180 days, provided
ient on the emergency regulation or
incil recommendation for emergency
s actively preparing a fishery manage-

ment, plan, plan amendment, or proposed regulations to address the emergency or overfishing on a permanent basis;

(C) that responds to a public health emergency or an oil spill may remain in effect until the circumstances that created the emergency no longer exist, *Provided*, That the public has an opportunity to comment after the regulation is published; and, in the case of a public health emergency, the Secretary of Health and Human Services concurs with the Secretary's action; and

(D) may be terminated by the Secretary at an earlier date by publication in the Federal Register of a notice of termination, except for emergency regulations promulgated under paragraph (2) in which case such early termination may be made only upon the agreement of the Secretary and the Council concerned.

**(d) Responsibility of Secretary**

The Secretary shall have general responsibility to carry out any fishery management plan or amendment approved or prepared by him, in accordance with the provisions of this chapter. The Secretary may promulgate such regulations, in accordance with section 553 of Title 5, as may be necessary to discharge such responsibility or to carry out any other provision of this chapter.

**(e) Effect of certain laws on certain time requirements**

The Paperwork Reduction Act of 1980 (44 U.S.C. 3501 et seq.), the Regulatory Flexibility Act (5 U.S.C. 601 et seq.), and Executive Order Numbered 12866, dated September 30, 1993, shall be complied with within the time limitations specified in subsections (a), (b), and (c) of section 1854 of this title as they apply to the functions of the Secretary under such provisions.

**(f) Judicial review**

(1) Regulations promulgated by the Secretary under this chapter and actions described in paragraph (2) shall be subject to judicial review to the extent authorized by, and in accordance with, chapter 7 of Title 5, if a petition for such review is filed within 30 days after the date on which the regulations are promulgated or the action is published in the Federal Register, as applicable; except that—

    (A) section 705 of such Title is not applicable, and

    (B) the appropriate court shall only set aside any such regulation or action on a ground specified in section 706(2)(A), (B), (C), or (D) of such Title.

(2) The actions referred to in paragraph (1) are actions that are taken by the Secretary under regulations which implement a fishery management plan, including but not limited to actions that establish the date of closure of a fishery to commercial or recreational fishing.

(3)(A) Notwithstanding any other provision of law, the Secretary shall file a response to any petition filed in accordance with paragraph (1), not later than 45 days after the date the Secretary is served with that petition, except that the appropriate court may extend the period for filing such a response upon a showing by the Secretary of good cause for that extension.

    (B) A response of the Secretary under this paragraph shall include a copy of the administrative record for the regulations that are the subject of the petition.

(4) Upon a motion by the person who files a petition under this subsection, the appropriate court shall assign the matter for hearing at the earliest possible date and shall expedite the matter in every possible way.

**(g) Negotiated conservation and management measures**

(1)(A) In accordance with regulations promulgated by the Secretary pursuant to this paragraph, a Council may establish a fishery negotiation panel to assist in the development of specific conservation and management measures for a fishery under its authority. The Secretary may establish a fishery negotiation panel to assist in the development of specific conservation and management measures required for a fishery under section 1854(e)(5) of this title, for a fishery for which the Secretary has authority under section 1854(g) of this title, or for any other fishery with the approval of the appropriate Council.

Case 2:00-cv-00028    Document 69    Filed in TXSD on 08/10/2000    Page 32 of 35

996, after the Secretary shall promulgate
ed in cooperation with the Administrative
establishment, and operation of) fishery
comparable to the procedures for negotiat-
f chapter 5 of Title 5, that
t, such report, shall specify all the areas
cluding, if appropriate, proposed conserva-
other information submitted by members
Secretary shall publish such report in the

strued to require either a Council or the
all or any portion of a report, from a
bsection in the development of specific
r the fishery for which the panel was

ss system permits

the Secretary shall establish an exclusive
nistered on a regional basis) for limited
on 1853(b)(6) of this title or other Federal
shall provide for the registration of title
as for procedures for changes, in the
ccurrence of involuntary transfers, judicial
ment of judgments thereon, and related
Such registry system shall

ce of a nonjudicial foreclosure or enforce-
of a senior security interest acquires or
the event of a nonjudicial foreclosure, by
r security interests are released when the

rmation filed under such system, notwith-

quirements of applicable law that the
registry system

ulations as may be necessary to carry out
uncils and providing an opportunity for
to contract with non-Federal entities to

ly person except the transferor, its heirs
e thereof, all security interests, shall and
l in paragraph (1), shall be registered in
under paragraph (2). Such registration
ion of title to, and security interests in,
eon, which shall be perfected exclusively
de of 1986 (26 U.S.C. 1 et seq.). The
of a permit if a lien has been filed by the
before collecting any transfer fee under

e determined in order of filing, the first
d security interest shall remain valid and
ce or place of business of the owner of
"security interest" shall include security
ances of whatever kind.

f this title, the Secretary shall collect a
percent of the value of a limited access
o such permit with the central registry
ed title. Any such fee collected shall be
istration Fund established under subpar-

(B) There is established in the Treasury a Limited Access System Administration Fund. The Fund shall be available, without appropriation or fiscal year limitation, only to the Secretary for the purposes of—

(i) administering the central registry system; and

(ii) administering and implementing this chapter in the fishery in which the fees were collected. Sums in the Fund that are not currently needed for these purposes shall be kept on deposit or invested in obligations of, or guaranteed by, the United States.

**(i) Alaska and western Pacific community development programs**

(1)(A) The North Pacific Council and the Secretary shall establish a western Alaska community development quota program under which a percentage of the total allowable catch of any Bering Sea fishery is allocated to the program.

(B) To be eligible to participate in the western Alaska community development quota program under subparagraph (A) a community shall—

(i) be located within 50 nautical miles from the baseline from which the breadth of the territorial sea is measured along the Bering Sea coast from the Bering Strait to the western most of the Aleutian Islands, or on an island within the Bering Sea;

(ii) not be located on the Gulf of Alaska coast of the north Pacific Ocean;

(iii) meet criteria developed by the Governor of Alaska, approved by the Secretary, and published in the Federal Register;

(iv) be certified by the Secretary of the Interior pursuant to the Alaska Native Claims Settlement Act (43 U.S.C. 1601 et seq.) to be a Native village;

(v) consist of residents who conduct more than one-half of their current commercial or subsistence fishing effort in the waters of the Bering Sea, or waters surrounding the Aleutian Islands; and

(vi) not have previously developed harvesting or processing capability sufficient to support substantial participation in the groundfish fisheries in the Bering Sea, unless the community can show that the benefits from an approved Community Development Plan would be the only way for the community to realize a return from previous investments.

(C)(i) Prior to October 1, 2001, the North Pacific Council may not submit to the Secretary any fishery management plan, plan amendment, or regulation that allocates to the western Alaska community development quota program a percentage of the total allowable catch of any Bering Sea fishery for which, prior to October 1, 1995, the Council had not approved a percentage of the total allowable catch for allocation to such community development quota program. The expiration of any plan, amendment, or regulation that meets the requirements of clause (ii) prior to October 1, 2001, shall not be construed to prohibit the Council from submitting a revision or extension of such plan, amendment, or regulation to the Secretary if such revision or extension complies with the other requirements of this paragraph.

(ii) With respect to a fishery management plan, plan amendment, or regulation for a Bering Sea fishery that—

(I) allocates to the western Alaska community development quota program a percentage of the total allowable catch of such fishery; and

(II) was approved by the North Pacific Council prior to October 1, 1995;

the Secretary shall, except as provided in clause (iii) and after approval of such plan, amendment, or regulation under section 1854 of this title, allocate to the program the percentage of the total allowable catch described in such plan, amendment, or regulation. Prior to October 1, 2001, the percentage submitted by the Council and approved by the Secretary for any such plan, amendment, or regulation shall be no greater than the percentage approved by the Council for such fishery prior to October 1, 1995.

(iii) The Secretary shall phase in the percentage for community development quotas approved in 1995 by the North Pacific Council for the Bering Sea crab fisheries as follows:

(I) 3.5 percent of the total allowable catch of each such fishery for 1998 shall be allocated to the western Alaska community development quota program;

(II) 5 percent of the total allowable catch of each such fishery for 1999 shall be allocated to the western Alaska community development quota program; and

**(III)** 7.5 percent of the total allowable catch of each such fishery for 2000 and thereafter shall be allocated to the western Alaska community development quota program, unless the North Pacific Council submits and the Secretary approves a percentage that is no greater than 7.5 percent of the total allowable catch of each such fishery for 2001; or the North Pacific Council submits and the Secretary approves any other percentage on or after October 1, 2001.

**(D)** This paragraph shall not be construed to require the North Pacific Council to resubmit, or the Secretary to reapprove, any fishery management plan or plan amendment approved by the North Pacific Council prior to October 1, 1995, that includes a community development quota program, or any regulations to implement such plan or amendment.

(2)(A) The Western Pacific Council and the Secretary may establish a western Pacific community development program for any fishery under the authority of such Council in order to provide access to such fishery for western Pacific communities that participate in the program.

(B) To be eligible to participate in the western Pacific community development program, a community shall—

    (i) be located within the Western Pacific Regional Fishery Management Area;

    (ii) meet criteria developed by the Western Pacific Council, approved by the Secretary and published in the Federal Register;

    (iii) consist of community residents who are descended from the aboriginal people indigenous to the area who conducted commercial or subsistence fishing using traditional fishing practices in the waters of the Western Pacific region;

    (iv) not have previously developed harvesting or processing capability sufficient to support substantial participation in fisheries in the Western Pacific Regional Fishery Management Area; and

    (v) develop and submit a Community Development Plan to the Western Pacific Council and the Secretary.

(C) In developing the criteria for eligible communities under subparagraph (B)(ii), the Western Pacific Council shall base such criteria on traditional fishing practices in or dependence on the fishery, the cultural and social framework relevant to the fishery, and economic barriers to access to the fishery.

(D) For the purposes of this subsection "Western Pacific Regional Fishery Management Area" means the area under the jurisdiction of the Western Pacific Council, or an island within such area.

(E) Notwithstanding any other provision of this chapter, the Western Pacific Council shall take into account traditional indigenous fishing practices in preparing any fishery management plan.

(3) The Secretary shall deduct from any fees collected from a community development quota program under section 1854(d)(2) of this title the costs incurred by participants in the program for observer and reporting requirements which are in addition to observer and reporting requirements of other participants in the fishery in which the allocation to such program has been made.

(4) After October 11, 1996, the North Pacific Council and Western Pacific Council may not submit to the Secretary a community development quota program that is not in compliance with this subsection.

(As amended Pub.L. 101–627, Title I, §§ 110(b)(2), 111(a)(1), (b), Nov. 28, 1990, 104 Stat. 4451, 4452; Pub.L. 104–297, §§ 110(a) to (d), 111(a), Oct. 11, 1996, 110 Stat. 3587 to 3590, 3592.)

**HISTORICAL AND STATUTORY NOTES**

**Revision Notes and Legislative Reports**

1996 Acts. Senate Report No. 104–276, see 1996 U.S. Code Cong. and Adm. News, p. 4073.

**References in Text**

This chapter, referred to in text, read in the original "this Act", meaning Pub.L. 94–265, Apr. 13, 1976, 90 Stat. 331, as amended, known as the Magnuson-Stevens Fishery Conservation and Management Act, which is classified principally to this chapter. For complete classification of this Act to the Code, see Short Title note set out under section 1801 of this title and Tables.

Executive Order Numbered 12866, dated September 30, 1993, referred to in subsec. (e), is set out as a note under section 601 of Title 5, Government Organization and Employees.

The Internal Revenue Code of 19[ ] to, in subsec. (h)(3), is classified Internal Revenue Code.

The Alaska Native Claims Sett[ ] referred to in subsec. (l)(1)(B)(iv) 92–203, Dec. 18, 1971, 85 Stat. 688, which is classified generally to cha[ ] tion 1601 et seq.) of Title 43, Public complete classification of this Act t see Short Title note set out under of Title 43 and Tables.

**Amendments**

1996. Amendments. Catchline. 104–297, § 110(a)(1), (3), substituted [ ]quirements and authority" for "Im[ ] of fishery management plans".

Subsec. (a). Pub.L. 104–297, § 1 substituted provisions relating to [ ] tion and notification of entry for p[ ] lating to promulgation of regulation mentation of plans.

Subsec. (b). Pub.L. 104–297, § 1 added subsec. (b), and redesignated [ ] sec. (b) as (f).

Subsec. (c). Pub.L. 104–297, § 1 serted "and interim measures" fo [ ]tions" in the subsection heading.

Subsec. (c)(1), (2). Pub.L § 110(b)(2), substituted "or that it sures are needed to reduce overfis "involving" wherever appearing, ins terim measures" after "emergency wherever appearing, and substitute cy, or overfishing" for "emergenc appearing except in the phrase "em[ ]nistions".

Subsec. (c)(3). Pub.L. 104–297, inserted "or interim measure" after regulation" wherever appearing, ad (B), struck out former subpar. (E that any emergency regulation wou effect for not more than 90 days af of such publication, except that any tion could, by agreement of the S[ ] the Council, be promulgated for on period of not more than 90 days, ad (C), and redesignated former subpar

Subsec. (e). Pub.L. 104–297, § 1 tuted "Executive Order Numbered September 30, 1993, shall be compli in the time limitations specified in (b), and (c) of section 1854 of th "Executive Order Numbered 12291 ruary 17, 1981, shall be complied wi time limitations specified in subsec section or section 1854(a) and (b) o

Subsec. (f). Pub.L. 104–297, § designated former subsec. (b) as (f).

Subsecs. (g), (h). Pub.L. 104–2 added subsecs. (g) and (h).

Subsec. (i). Pub.L. 104–297, § 1 subsec. (i).

1990 Amendments. Subsec. ( 101–627, §§ 110(b)(2), 111(a)(1)(A), former subsec. (c) as (a) and, in sub designated, substituted "section 18[ ] of this title" for "section 1854(c) (

Case 2:00-cv-00028   Document 69   Filed in TXSD on 08/10/2000   Page 35 of 35

tch of each such fishery for 2000 and Alaska community development quota submits and the Secretary approves a nt of the total allowable catch of each e Council submits and the Secretary tober 1, 2001.

require the North Pacific Council to ery management plan or plan amend- or to October 1, 1995, that includes a regulations to implement such plan or

retary may establish a western Pacific under the authority of such Council in n Pacific communities that participate

tern Pacific community development

egional Fishery Management Area; ern Pacific Council, approved by the ter;

are descended from the aboriginal ed commercial or subsistence fishing aters of the Western Pacific region; ing or processing capability sufficient ries in the Western Pacific Regional

elopment Plan to the Western Pacific

nities under subparagraph (B)(ii), the on traditional fishing practices in or ramework relevant to the fishery, and

ern Pacific Regional Fishery Manage- of the Western Pacific Council, or an

; chapter, the Western Pacific Council ng practices in preparing any fishery

collected from a community develop- of this title the costs incurred by eporting requirements which are in of other participants in the fishery in e.

Council and Western Pacific Council elopment quota program that is not in

1), (b), Nov. 28, 1990, 104 Stat. 4451, 4452; Stat. 3587 to 3590, 3592.)

TORY NOTES

uson-Stevens Fishery Conservation and gement Act, which is classified principally s chapter. For complete classification of ct to the Code, see Short Title note set out section 1801 of this title and Tables.

cutive Order Numbered 12866, dated Sep- r 30, 1993, referred to in subsec. (e), is set s a note under section 601 of Title 5, nment Organization and Employees.

n. The Internal Revenue Code of 1986, referred to in subsec. (h)(3), is classified to Title 26, Internal Revenue Code.

The Alaska Native Claims Settlement Act, referred to in subsec. (l)(1)(B)(iv), is Pub.L. 92-203, Dec. 18, 1971, 85 Stat. 688, as amended, which is classified generally to chapter 33 (sec- tion 1601 et seq.) of Title 43, Public Lands. For complete classification of this Act to the Code, see Short Title note set out under section 1601 of Title 43 and Tables.

Amendments

1996 Amendments. Catchline. Pub.L. 104-297, § 110(a)(1), (3), substituted "Other re- quirements and authority" for "Implementation of fishery management plans".

Subsec. (a). Pub.L. 104-297, § 110(a)(1), (3), substituted provisions relating to gear evalua- tion and notification of entry for provisions re- lating to promulgation of regulations and imple- mentation of plans.

Subsec. (b). Pub.L. 104-297, § 110(a)(2), (3), added subsec. (b), and redesignated former sub- sec. (b) as (f).

Subsec. (c). Pub.L. 104-297, § 110(b)(1), in- serted "and interim measures" following "ac- tions" in the subsection heading.

Subsec. (c)(1), (2). Pub.L. 104-297, § 110(b)(2), substituted "or that interim mea- sures are needed to reduce overfishing for" for "involving" wherever appearing, inserted "or in- terim measures" after "emergency regulations" wherever appearing, and substituted "emergen- cy, or overfishing" for "emergency" wherever appearing except in the phrase "emergency reg- ulations".

Subsec. (c)(3). Pub.L. 104-297, § 110(b)(3), inserted "or interim measure" after "emergency regulation" wherever appearing, added subpar. (B), struck out former subpar. (B), providing that any emergency regulation would remain in effect for not more than 90 days after the date of such publication, except that any such regula- tion could, by agreement of the Secretary and the Council, be promulgated for one additional period of not more than 90 days, added subpar. (C), and redesignated former subpar. (C) as (D).

Subsec. (e). Pub.L. 104-297, § 110(c), substi- tuted "Executive Order Numbered 12866, dated September 30, 1993, shall be complied with with- in the time limitations specified in subsecs. (a), (b), and (c) of section 1854 of this title" for "Executive Order Numbered 12291, dated Feb- ruary 17, 1981, shall be complied with within the time limitations specified in subsection (c) of this section or section 1854(a) and (b) of this title".

Subsec. (f). Pub.L. 104-297, § 110(a)(2), re- designated former subsec. (b) as (f).

Subsecs. (g), (h). Pub.L. 104-297, § 110(d), added subsecs. (g) and (h).

Subsec. (i). Pub.L. 104-297, § 111(a), added subsec. (i).

1990 Amendments. Subsec. (a). Pub.L. 101-627, §§ .110(b)(2), 111(a)(1)(A), redesignated former subsec. (c) as (a) and, in subsec. (a) as so designated, substituted "section 1854(c) or (f)(3) of this title" for "section 1854(c) of this title".

Subsec. (b). Pub.L. 101-627, § 111(a)(1)(A), (b), redesignated former subsec. (d) as (b) and, in subsec. (b) as so redesignated, designated existing provision as par. (a), inserting "or the action is published in the Federal Register, as applicable" after "promulgated", and redesignat- ed former pars. (a) and (2) as subpars. (A) and (B), respectively, and added pars. (2) to (4).

Subsecs. (c) to (e). Pub.L. 101-627, § 111(a)(1), redesignated former subsecs. (e), (g), and (h) as (c), (d), and (e), respectively.

Community Development Quota Report

Section 108(h) of Pub.L. 104-297 provided that: "Not later than October 1, 1998, the Na- tional Academy of Sciences, in consultation with the Secretary, the North Pacific and Western Pacific Councils, communities and organizations participating in the program, participants in af- fected fisheries, and the affected States, shall submit to the Secretary of Commerce and Con- gress a comprehensive report on the perfor- mance and effectiveness of the community devel- opment quota programs under the authority of the North Pacific and Western Pacific Councils. The report shall—

"(1) evaluate the extent to which such pro- grams have met the objective of providing com- munities with the means to develop ongoing commercial fishing activities;

"(2) evaluate the manner and extent to which such programs has resulted in the communities and residents—

"(A) receiving employment opportunities in commercial fishing and processing; and

"(B) obtaining the capital necessary to in- vest in commercial fishing, fish processing, and commercial fishing support projects (in- cluding infrastructure to support commercial fishing);

"(3) evaluate the social and economic condi- tions in the participating communities and the extent to which alternative private sector em- ployment opportunities exist;

"(4) evaluate the economic impacts on partici- pants in the affected fisheries, taking into ac- count the condition of the fishery resource, the market, and other relevant factors;

"(5) recommend a proposed schedule for ac- complishing the developmental purposes of com- munity development quotas; and

"(6) address such other matters as the Na- tional Academy of Sciences deems appropriate."

Existing Quota Plans Unaffected by Pub.L. 104-297

Section 108(i) of Pub.L. 104-297 provided that: "Nothing in this Act or the amendments made by this Act [see Tables for classification] shall be construed to require a reallocation of individual fishing quotas under any individual fishing quota program approved by the Secre- tary before January 4, 1995."

Registry Transition for Limited Access Sys- tem Permits

Section 110(e) of Pub.L. 104-297 as amended Pub.L. 104-208, Div. A, Title I, § 101(a) [Title II, § 211(b)], Sept. 30, 1996, 110 Stat. 3009-41, provided that: "Security interests on permits